*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MUSA ABDUL IKHARO,

                    *Petitioner,*

        *v.*

ERIC H. HOLDER, JR., Attorney General,

                    *Respondent.*

Nos. 08-4139; 09-3587

On Petition for Review from the
Board of Immigration Appeals.
No. A029 432 912.

Decided and Filed: August 2, 2010

Before: GILMAN and WHITE, Circuit Judges; THAPAR, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Brian C. DiFranco, DiFRANCO LAW OFFICE, Columbus, Ohio, for Petitioner. Jesse Lloyd Busen, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondent.

_____

## OPINION

_____

    RONALD LEE GILMAN, Circuit Judge. Musa Abdul Ikharo is a 50-year-old Nigerian native who entered the United States illegally in 1981, but later became a lawful permanent resident. In 2002, the government charged Ikharo with removability due to his having two convictions for crimes involving moral turpitude and because of his status as an aggravated felon. An immigration judge (IJ) found Ikharo removable as

_____

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

charged and denied his applications for waiver of inadmissibility, asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT).

Ikharo appealed the IJ's decision to the Board of Immigration Appeals (BIA) and, following a fee dispute with his counsel, he attempted to file a pro se brief. The BIA rejected Ikharo's brief as improperly filed, however, and summarily affirmed the IJ's decision. It further denied Ikharo's motion to reconsider. For the following reasons, we **DENY** review of both the BIA's order affirming the decision of the IJ and the BIA's order denying Ikharo's motion to reconsider.

## I.     BACKGROUND

**A.     The charge of removability**

Ikharo entered the United States without inspection through the Canadian-Michigan border in 1981. While living in Nigeria, Ikharo was a medical assistant in the Nigerian Navy, but he deserted in order to immigrate to the United States. Ikharo became a lawful permanent resident in November 1993 via an unspecified immigration procedure and joined the United States Naval Reserve one month later. At all times subsequent to his obtaining permanent residency, Ikharo lived in Columbus, Ohio. Ikharo was married from 1990 to 1991 and he has three children, two of whom are United States citizens.

In December 1994, Ikharo pled guilty in the Franklin County Court of Common Pleas to (1) disseminating matter harmful to a juvenile, in violation of Ohio Revised Code § 2907.31(A), and (2) gross sexual imposition, in violation of Ohio Revised Code § 2907.05. Ikharo was sentenced to two years of imprisonment after entering a plea of guilty. He also received an Other Than Honorable Discharge from the United States Navy due to his gross-sexual-imposition conviction

Eight years later, in May 2001, Ikharo was indicted in the Franklin County Court of Common Pleas on one count of burglary, in violation of Ohio Revised Code § 2911.12. Following a jury trial, Ikharo was convicted on this charge and received a 90-day prison sentence. His conviction was vacated on procedural grounds, however,

by the Ohio Tenth District Court of Appeals, which held that Ikharo's trial counsel was ineffective. Ikharo subsequently pled guilty to the lesser-included offense of criminal mischief in August 2003. He received a 60-day prison sentence on this reduced charge.

In October 2002, prior to the vacatur of Ikharo's burglary conviction, the former Immigration and Naturalization Service (now the Department of Homeland Security) served Ikharo with a notice to appear. The agency charged Ikharo with removability because he was an alien who, after being admitted to the United States, (1) had been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, and (2) had been convicted of an aggravated felony, specifically the sexual abuse of a minor.

Ikharo challenged the charge of removability on multiple grounds. First, he sought waivers of inadmissibility under Sections 212(c) and (h) of the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1182(c) and (h). (Although Congress repealed INA § 212(c) in 1996, relief under that statute remains available for aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *INS v. St. Cyr*, 533 U.S. 289, 326 (2001).) Section 212(c) allows for a discretionary waiver of inadmissibility for "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years." INA § 212(c) (repealed 1996).

The BIA has held that this provision is applicable to aliens who are lawful permanent residents regardless of whether they departed the United States following the act or acts that render them deportable. *In re Silva*, 16 I. & N. Dec. 26, 30 (B.I.A. 1976). But this relief is available only if the alien's otherwise deportable offense is comparable to one of the grounds of inadmissibility set forth in INA § 212(a). 8 C.F.R. § 1212.3(f)(5) (providing that an alien is ineligible for a § 212(c) waiver when charged with removability as an aggravated felon "on a ground which does not have a statutory counterpart in section 212 of the Act").

Ikharo claimed that he was eligible for relief under § 212(c) because he had lived in the United States legally for more than seven years prior to his being charged with removability. He also contended that his conviction for gross sexual imposition was not a conviction for sexually abusing a minor and therefore did not qualify as an aggravated felony under § 212(a).

Ikharo likewise sought a waiver of inadmissibility under § 212(h)(1)(B). Under this provision, an alien designated as an aggravated felon is eligible for a discretionary waiver of inadmissibility if he or she can establish that deportation "would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." INA § 212(h)(1)(B). In his application for relief, Ikharo claimed that his removal would cause extreme hardship to his then 10-year-old son, a United States citizen. Ikharo testified that he had been paying child support for his son since 1998, but said that his son would not accompany Ikharo to Nigeria due to their family's Christian beliefs, the poor quality of Nigerian schools and health services, and the fact that Ikharo would not have a home for his son.

In addition to his applications for a waiver of inadmissibility, Ikharo sought asylum, the withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under the CAT pursuant to 8 C.F.R. §§ 1208.16 and 1208.17. Ikharo stated that, as a Christian, he feared being persecuted by Muslims should he to return to Nigeria, noting that his parents' house was invaded by Muslim fundamentalists in 1997. He added that upon returning to Nigeria for a visit shortly after the 1997 incident, he discovered that his parents' house had been searched and that their car and valuables had been taken. According to Ikharo, there were "blood written signs of death on the door" of the house.

Ikharo also sought protection from the repercussions of his decision to desert the Nigerian Navy. He claimed that the Navy would likely court martial him and sentence him to life imprisonment or death by firing squad for leaving the service without being formally discharged.

**B.        The removal hearing**

In May 2007, Ikharo appeared and testified at his removal hearing before the IJ. He reiterated his belief that he would be imprisoned or executed for deserting the Nigerian Navy, adding that he had visited Nigerian military prisons prior to coming to the United States and observed unsanitary conditions and inhumane treatment of prisoners at those facilities. Ikharo insisted that the Nigerian military "indiscriminately" executed deserters, despite acknowledging that Nigerian law did not include the death penalty for such an offense. To support his argument, Ikharo presented a document purportedly issued by the Nigerian Naval Headquarters stating that the death penalty was imposed on deserters. Ikharo said an unnamed friend in Nigeria obtained the document for him.

In addition to testifying about his desertion from the Nigerian Navy, Ikharo elaborated on the persecution that he would allegedly suffer due to his Christian beliefs if he were removed to Nigeria. Ikharo said that his parents had been members of their church for 30 years and that his father was an active and well-known member of the congregation. He submitted various pictures of his father preaching at the church. According to Ikharo, members of the community easily identified him as his father's son and as a similarly strong supporter of the congregation.

Ikharo stated that, after their house was invaded by Muslim fundamentalists in 1997, his parents sought treatment in a hospital several hours away from their residence in an effort to escape their attackers. He added that he sent money to his parents and visited them after the incident, but that his mother died soon thereafter. According to Ikharo, his father relocated to the southern region of the country and, although few Muslims live nearby, his father still fears being tracked down and attacked by Muslim fundamentalists. Ikharo testified that although the then-president of Nigeria was Christian, he was unable to prevent Muslim attacks in the country. He conceded, however, that the Muslim fundamentalists were not connected to the Nigerian government.

Dr. Don Ibezim, a United States citizen who was born in Nigeria, testified on behalf of Ikharo. A program manager and research specialist at The Ohio State University, Ibezim said that he knew Ikharo when the latter was an engineering student at Ohio State in the early 1990s. Ibezim was of the opinion that Ikharo would be arrested and tortured upon returning to Nigeria and that Ikharo could not avoid these consequences simply by living in another part of the country. In addition, Ibezim recalled being told of Ikharo's visit to Nigeria following the invasion of his parents' house. Ibezim stated that the attack occurred during a time of much civil unrest in the country due to conflicts between Muslims and Christians, and that several homes were destroyed during rioting.

## C.        The IJ's decision

In July 2007, the IJ issued a written decision finding Ikharo removable as charged and denying his applications for relief. The IJ rejected the argument that Ikharo was eligible for a waiver of inadmissibility pursuant to INA § 212(c), concluding that Ikharo's gross-sexual-imposition conviction constituted the aggravated felony of the sexual abuse of a minor. Relying on *In re Blake*, 23 I. & N. Dec. 722 (B.I.A. 2005), which held that convictions for the sexual abuse of minors have no statutory counterpart in § 212(a), the IJ determined that Ikharo was ineligible for relief under § 212(c). The IJ similarly denied Ikharo's application for a waiver of inadmissibility under INA § 212(h)(1)(B), finding that Ikharo had failed to provide evidence to support his claim that his son would experience extreme hardship if Ikharo was removed.

Next, the IJ found that Ikharo was a less-than-credible witness. Although Ikharo had provided a letter purportedly received from the Nigerian Naval Headquarters stating that he was a "wanted defector," the IJ afforded the letter minimal weight due to its lack of authentication and Ikharo's inability to explain how he obtained it. The IJ further doubted Ikharo's claim that he would be tortured or executed if removed to Nigeria in light of the fact that he had visited his parents in 1997 without incident. Ikharo was also faulted by the IJ for failing to present affidavits, news articles, and country reports to substantiate his fear of torture and execution. Finally, the IJ questioned Ikharo's

testimony about his parents, noting that Ikharo presented no evidence supporting his claim that the 1997 attack on their house was religiously motivated. The IJ also observed that although Ikharo testified that his mother died in 1997, his 2007 asylum application stated that both parents were still living. Collectively, these deficiencies in Ikharo's testimony led the IJ to conclude that Ikharo was not a credible witness.

Unlike Ikharo, the IJ found Dr. Ibezim to be a credible witness, but held that Ibezim's testimony did not support Ikharo's claim of future persecution. The IJ reached this conclusion because Ibezim "did not know [Ikharo] in Nigeria and also does not know [Ikharo]'s family personally." This was apparently the IJ's way of explaining that Ibezim was unable to verify that Ikharo's family was persecuted by Muslim fundamentalists.

Finally, the IJ denied all of Ikharo's applications for relief. The IJ found that Ikharo was statutorily ineligible for asylum due to his conviction for gross sexual imposition, an aggravated felony. Ikharo's applications for withholding of removal under both INA § 241(b)(3) and the CAT were similarly denied. The IJ determined that, although Ikharo was sentenced to only two years' imprisonment for his gross-sexual-imposition conviction, the offense was a "particularly serious crime" under INA § 241(b)(3)(B)(ii), thereby rendering him statutorily ineligible for relief. As for Ikharo's ineligibility for the deferral of removal under the CAT, the IJ found that Ikharo had failed to establish that he was more likely than not to be tortured by the Nigerian government upon returning to that country.

**D.    Appeal to the BIA**

Ikharo appealed the IJ's decision to the BIA in August 2007, challenging the IJ's conclusions that he was removable for having been convicted of an aggravated felony and that he was ineligible for the relief he sought. In February 2008, the BIA, in response to a motion filed by Ikharo's then-attorney Samuel Ezenagu, extended the deadline for Ikharo's submission of his brief until March 17, 2008. Shortly thereafter, Ikharo and Ezenagu became engaged in a fee dispute, and Ezenagu allegedly declined to file a brief with the BIA unless Ikharo first paid the outstanding fee balance. Ikharo

dismissed Ezenagu as his counsel on March 13, 2008. He then filed a pro se brief with the BIA four days later, which the BIA rejected because it was not signed by an attorney of record. On March 24, 2008, Ezenagu filed a motion to withdraw as Ikharo's counsel, which the BIA granted the following month.

In August 2008, the BIA summarily affirmed the IJ's decision without further opinion. Ikharo, who by this point in time had retained his current counsel, filed a motion to reconsider that requested the BIA to accept his pro se brief as timely submitted. Although he argued that the BIA should have accepted his pro se brief and reconsidered its decision in light of the brief, Ikharo submitted to the BIA only the cover and signature pages of the document. Declining to alter its previous decision, the BIA denied Ikharo's motion to reconsider in April 2009.

Ikharo now petitions this court for review of the BIA's August 2008 order affirming the IJ's decision (No. 08-4139) and the BIA's April 2009 order denying his motion to reconsider (No. 09-3587). These two cases have been consolidated for review.

## II.    ANALYSIS

### A.    Jurisdiction over Ikharo's petition for review

As an initial matter, the government contends that we do not have jurisdiction over Ikharo's petition to review the BIA's order. The government argues that because the IJ determined that Ikharo was removable as an aggravated felon under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), based on his conviction for gross sexual imposition, this court's review is precluded by statute.

Pursuant to INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C), "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii)." But this jurisdictional bar is limited by the next subparagraph of the statute, which states that "[n]othing in subparagraph (B) or (C) . . . shall be construed as precluding review of constitutional claims or questions of law." INA § 242(a)(2)(D). We also retain

jurisdiction to determine whether Ikharo's gross-sexual-imposition conviction was an aggravated felony and therefore constitutes grounds for removal under INA § 237(a)(2)(A)(iii). *See Patel v. Ashcroft*, 401 F.3d 400, 407 (6th Cir. 2005) ("Thus, we have jurisdiction to review whether § 1252(a)(2)(C) applies, i.e., whether Patel's offense constitutes an aggravated felony.").

"Where the BIA summarily adopts the IJ's decision without issuing its own opinion, we review the decision of the IJ as the final administrative order." *Diaz-Zanatta v. Holder*, 558 F.3d 450, 454 (6th Cir. 2009). On petitions from BIA decisions, we review questions of law de novo, "but substantial deference is given to the BIA's interpretation of the INA and accompanying regulations." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). This deference, however, does not extend to the BIA's determination that Ikharo is an aggravated felon. Instead, the "conclusion that a particular state conviction amounts to an aggravated felony within the meaning of § 1227(a)(2)(A)(iii) is reviewed *de novo* because such a conclusion depends upon interpreting state statutes and federal statutes unrelated to immigration." *Patel*, 401 F.3d at 407.

Under INA § 237(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." An "aggravated felony," for the purposes of this statute, includes the "murder, rape, or sexual abuse of a minor." INA § 101(a)(43)(A), 8 U.S.C. § 1101(a)(43)(A).

The IJ concluded that Ikharo's gross-sexual-imposition conviction constituted the sexual abuse of a minor and was therefore an aggravated felony for INA § 237(a)(2)(A)(iii) purposes. In addition to the preceding statutes, the IJ relied upon the federal-law definition of "sexual abuse" of a minor, which includes "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." 18 U.S.C. § 3509(a)(8). The IJ then compared the language of Ohio's gross-sexual-imposition statute with the federal statute, noting that the Ohio statute prohibits, among

other things, engaging in sexual contact with a nonspouse less than 13-years old, where the perpetrator "purposely compelled" the victim "to submit by force or threat of force." *See* Ohio Rev. Code Ann. § 2907.05. Observing that both statutes prohibit sexual contact with a child, the IJ determined that Ikharo's conviction constituted the sexual abuse of a minor and, as such, that Ikharo was removable as an aggravated felon pursuant to INA § 237(a)(2)(A)(iii). (Although the IJ failed to differentiate between the various subsections of § 2907.05, thereby erroneously indicating that every gross-sexual-imposition conviction under that statute necessarily involves force or threat of force, any error in this regard was harmless because Ikharo specifically pled guilty to the gross sexual imposition of a person less than 13-years old.)

Ikharo contested this issue before the IJ, and he alluded to the aggravated-felony argument in his motion to reconsider before the BIA. But he did not pursue this argument in his brief to this court. We therefore conclude that he has waived any challenge to the IJ's holding on this issue. *See, e.g.*, *Pagan v. Fruchey*, 492 F.3d 766, 769 n.1 (6th Cir. 2007) (en banc) ("Having failed to challenge [the district court's qualified immunity ruling] in his briefing, Pagan has waived any argument that the district court's decision . . . was incorrect."); *Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005) (holding that the petitioners had waived their claims for withholding of removal and for protection under the CAT by referencing them only in the statement of issues in their appellate brief). Accordingly, we lack jurisdiction to review the IJ's order of removal, except with regard to Ikharo's constitutional claim.

**B.     Constitutional claim**

Ikharo's constitutional claim is based on his argument that the BIA's refusal to consider his pro se brief due to its lack of an attorney's signature violated his right to procedural due process. According to Ikharo, this rejection deprived the BIA of its ability to effectively evaluate the various forms of relief he sought.

This court has summarized the analytical framework for reviewing alleged due process violations as follows:

> We review de novo alleged due process violations in removal hearings.
> We have stated that Fifth Amendment guarantees of due process extend
> to aliens in removal proceedings, entitling them to a full and fair hearing.
> To constitute fundamental unfairness, however, a defect in the removal
> proceedings must have been such as might have led to a denial of justice.
> Thus, proof of prejudice is necessary to establish a due process violation
> in an immigration hearing.  Therefore, reviewing an alleged due process
> violation is a two-step inquiry:  first, whether there was a defect in the
> removal proceeding; and second, whether the alien was prejudiced
> because of it.

*Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005) (brackets, citations, and internal

quotation marks omitted).  Our task is thus to analyze (1) whether the BIA's refusal to

accept Ikharo's pro se brief was a defect in his removal proceeding and, if so, (2)

whether Ikharo was prejudiced by the BIA's refusal.

### 1.     *Defect in the proceedings*

Turning to the first prong of the due process inquiry, we note that Ikharo bears

the burden of demonstrating that there was a defect in the proceedings.  "[T]he mere

possibility of [a defect] is not sufficient to show actual constitutional error." *Perlaska

v. Holder*, 361 F. App'x 655, 660 (6th Cir. 2010).  Ikharo argues that none of the rules

governing the filing of briefs with the BIA preclude pro se submissions made directly

by the alien.  He correctly points out that the regulations regarding filings with the BIA

are silent as to whether an alien's attorney must sign a submitted brief. *See* 8 C.F.R.

§ 1003.3.  Ikharo further relies upon the BIA's Practice Manual, which states in relevant

part that "[n]o appeal, motion, brief, or request for Board action is properly filed without

a signature from either the alien, the alien's representative, or a representative of the

[Department of Homeland Security]." *BIA Practice Manual* Ch. 3.3(b) (2004).

But the Manual also states that "[w]henever a party is represented, the party

should submit all filings and communications to the Board through the representative.

Filings should always be made by a party to the proceedings, or a party's representative,

and not by a third party." *Id.* Ch. 2.1(d).  Ikharo concedes that the language in Ch. 2.1(d)

is ambiguous, but he asserts that the word "or" in the second sentence operates in the

disjunctive, thereby allowing for either aliens or their representatives to make filings.

Moreover, Ikharo seeks leniency in the interpretation of the Practice Manual, restating his allegation that he dismissed Ezenagu as his attorney on March 13, 2008, just four days before his brief was due.

Ikharo makes a colorable showing that the BIA Practice Manual does not explicitly prohibit a represented party from filing a brief pro se. Under Ch. 3.3(b), "properly filed" briefs include those signed by aliens. And Ch. 2.1(d) does not explicitly exclude such filings. The first sentence of the rule encourages—but does not require—an alien's attorney to submit all filings by providing that the represented alien "should" submit all filings through the representative. But the second sentence indicates that a represented alien *can* make such a filing. Accordingly, Ikharo has a plausible argument that the BIA's rejection of his brief in the absence of his attorney's signature constituted a defect in his removal proceedings.

### 2.      *Prejudice*

We have no need to resolve this issue, however, because Ikharo is unable to demonstrate that he was prejudiced by the existence of any such defect. "A showing of prejudice is essentially a demonstration that the alleged violation affected the outcome of the proceedings," and this court does not presume prejudice. *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005) (citation omitted). The only prejudice that Ikharo points to is the fact that his arguments regarding his applications for relief were never considered by the BIA.

But we have no basis for determining whether these arguments would have affected the outcome of Ikharo's removal proceedings because Ikharo never resubmitted his pro se brief to the BIA. Instead, when Ikharo obtained counsel and filed his motion to reconsider with the BIA, he submitted only the cover and signature pages of the 28-page brief. The contents of his pro se brief are therefore not in the record, nor is there any meaningful indication regarding whether the arguments made therein would have changed the outcome of the BIA's decision.

Moreover, to the extent that Ikharo's pro se brief contained the same arguments that he now raises on appeal, he cannot show that the brief would have affected the outcome of his proceedings. Ikharo essentially argues that the BIA's rejection of his brief precluded proper consideration of the IJ's finding that Ikharo was ineligible for (1) a waiver of inadmissibility pursuant to INA § 212(c), (2) a waiver of inadmissibility pursuant to INA § 212(h)(1)(B), (3) the withholding of removal under both INA § 241(b)(3) and the CAT, and (4) the deferral of removal under the CAT. As discussed below, all four of his arguments are without merit.

Ikharo first contends that the IJ erred by relying on *In re Blake*, 23 I. & N. Dec. 722 (B.I.A. 2005), in denying his application for waiver of inadmissibility under INA § 212(c) because, at the time of the IJ's ruling, the BIA's decision in *Blake* was on remand from the Second Circuit Court of Appeals. The BIA in *Blake* held that an alien convicted of sexually abusing a minor is ineligible for relief under § 212(c) because the offense constitutes an aggravated felony that has no counterpart in § 212(a). *Blake*, 23 I. & N. Dec. at 729. On appeal, the Second Circuit remanded the case to the BIA to determine whether a conviction for the sexual abuse of a minor, among other crimes, could constitute a "crime of moral turpitude" under § 212(a). *Blake v. Carbone*, 489 F.3d 88, 105 (2d Cir. 2007).

The BIA, however, is "not required to accept an adverse determination by one circuit court of appeals as binding throughout the United States." *In re Anselmo*, 20 I. & N. Dec. 25, 31 (B.I.A. 1989). Because the Second Circuit's remand in *Blake* is not binding on cases arising outside of that circuit, the IJ did not commit legal error in applying *Blake* to Ikharo's application for relief.

Ikharo next asserts that, with regard to his application for a waiver of inadmissibility under INA § 212(h)(1)(B), the IJ deprived him of the opportunity to submit evidence that his son would face extreme hardship if Ikharo was removed. This argument, however, is unsupported by the record. At the removal hearing, the IJ permitted Ikharo's attorney to submit additional briefing on his § 212(h)(1)(B) claim and specifically instructed Ikharo to "submit any written documentation regarding child

support payments or other evidence which would demonstrate how [Ikharo] supports his child." Ikharo submitted a brief approximately two months later, but the brief presented none of the evidence requested by the IJ. Instead, the brief argued only the *Blake* issue discussed in the preceding two paragraphs. Ikharo therefore has not shown that he was deprived the opportunity to present evidence in support of his § 212(h)(1)(B) claim.

In his third argument, Ikharo claims that the IJ erroneously denied his applications for the withholding of removal under both INA § 241(b)(3) and the CAT. The IJ held that Ikharo was ineligible for either form of relief because his conviction for gross sexual imposition was "a particularly serious crime." Ikharo responds by noting that he entered his plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), thereby maintaining his innocence and pleading guilty only to avoid an unfavorable result following a trial. According to Ikharo, his *Alford* plea cannot form the basis for the IJ's finding that he was convicted of a particularly serious crime because such a determination necessarily requires the IJ to rely on factual allegations to which Ikharo never admitted guilt.

Aliens who have been convicted of "a particularly serious crime" are ineligible for the withholding of removal. INA § 241(b)(3)(B)(ii). A conviction (or convictions) for an aggravated felony where the aggregate term of imprisonment imposed exceeds five years is per se a particularly serious crime. INA § 241(b)(3)(B). But even if the length of the sentence actually imposed for the aggravated felony is less than five years, the BIA may still determine that the particularly-serious-crime characterization is applicable. *Id.* The BIA analyzes whether a conviction is a particularly serious crime "on a case-by-case basis" by employing the following factors: "the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *In re Frentescu*, 18 I. & N. Dec. 244, 247 (B.I.A. 1982), *superseded in part by amendment to* 8 U.S.C. § 1253(h)(2), *as recognized in In re C-*, 20 I & N. Dec. 529, 533 (B.I.A. 1992). "Crimes against persons are more likely to be categorized as 'particularly serious crimes.'" *Id.*

In this case, the IJ held that Ikharo's gross-sexual-imposition conviction was a particularly serious crime because it involved "sexual contact with an eight-year-old girl." Ikharo contends that in reaching this conclusion, the IJ impermissibly relied on facts contained in the indictment and plea agreement as well as during the plea hearing. According to Ikharo, because he maintained his innocence of this charge by entering an *Alford* plea, the IJ could not rely on the underlying factual basis to find that Ikharo had committed a particularly serious crime.

This court, however, has held that "[a]n *Alford*-type guilty plea is a guilty plea in all material respects." *United States v. Tunning*, 69 F.3d 107, 110-11 (6th Cir. 1995) (further explaining that an *Alford* plea "is nothing more than a guilty plea entered by a defendant who either:  1) maintains that he is innocent; or 2) without maintaining his innocence, is unwilling or unable to admit that he committed acts constituting the crime" (citation and internal quotation marks omitted)).  Our sister circuits have similarly declined to differentiate between an *Alford* plea and a straightforward guilty plea in comparable circumstances.  In *Abimbola v. Ashcroft*, 378 F.3d 173 (2d Cir. 2004), for example, the Court of Appeals for the Second Circuit held that an *Alford* plea constitutes a conviction for purposes of determining whether an alien was removable for having committed an aggravated felony.  *Id*. at 180-81.  The court also noted that the relevant issue was whether a conviction resulted from the proceedings, not whether there was "an admission of guilt."  *Id*. at 181.

Another case on point is *United States v. Guerrero-Velasquez*, 434 F.3d 1193 (9th Cir. 2006).  There, the Ninth Circuit held that, by entering an *Alford* plea to second-degree burglary, the defendant had admitted to all of the facts contained in the information.  *Id*. at 1196-97.  As a result, there was a sufficient basis for determining that the defendant had committed a "crime of violence" and should receive a sentencing enhancement under the Sentencing Guidelines.  The court rejected the defendant's argument that he had not confessed to the underlying facts by entering an *Alford* plea. It held that the key question under the Guidelines was "whether a defendant has a *conviction* for a crime of violence, not whether the defendant has admitted to being

guilty of such a crime." *Id*. at 1197 (emphasis in original) (citation, ellipsis, and internal quotation marks omitted).

This rationale compels a similar outcome in the instant case. The relevant inquiry to determine Ikhaho's eligibility for withholding of removal requires analyzing whether he had been *convicted* of a particularly serious crime, not whether he had admitted his guilt. Ikharo's challenge to the IJ's denial of his applications for withholding of removal is thus without merit and would not have changed the outcome of his appeal to the BIA.

In his fourth and final argument, Ikharo contends that the IJ erred by concluding that Ikharo was not eligible for the deferral of removal under the CAT. In particular, Ikharo challenges the IJ's adverse credibility determination based on conflicting statements that Ikharo made about whether his mother survived the 1997 attack by Muslim fundamentalists. Ikharo argues that this finding was not directly related to his claim for relief.

Adverse credibility findings "must be based on issues that go to the heart of the applicant's claim." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). Such findings "cannot be based on an irrelevant inconsistency." *Id*. (citation omitted). "If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Id*. (citation and internal quotation marks omitted). (The REAL ID Act of 2005 changed the standard governing credibility determinations, *see* INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii), but the Act does not apply in this case because Ikharo applied for relief prior to its effective date, *see Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006).)

Contrary to Ikharo's assertion, the discrepancy regarding whether his mother survived the 1997 attack directly relates to his claim for protection under the CAT. Ikharo's claim for relief due to religious persecution was based on the 1997 attack, and his statement that his mother died shortly after the incident suggests that her death occurred as a result of the attack. This in turn enhances Ikharo's claim that his family

was persecuted in Nigeria due to their Christian beliefs by indicating that their persecution had severe consequences.

Likewise, Ikharo's argument that the IJ improperly "relied on a corroboration standard to make the adverse credibility finding" is to no avail. An IJ is permitted to rely on the failure of an alien to present corroborating evidence when making a credibility determination and where there are also inconsistencies in the alien's testimony. *See, e.g.*, *Berri v. Gonzales*, 468 F.3d 390, 395-96 (6th Cir. 2006) ("We hold that given the number of inconsistencies and the lack of corroborating evidence to support the Berris' statements, the IJ's credibility determination was a reasonable one, and we are inclined to follow it."). In sum, Ikharo's challenge to the IJ's credibility finding would not have affected the outcome of his removal proceedings, even if the BIA had considered Ikharo's pro se brief.

Given this analysis, Ikharo has not shown that he was prejudiced by the BIA's action. We accordingly conclude that his procedural due process claim is without merit.

**C.    Ikharo's petition for review of the BIA's denial of his motion for reconsideration**

We now turn our attention to Ikharo's petition for review of the BIA's denial of his motion to reconsider (No. 09-3587). This petition was brought separately from Ikharo's petition for review of the BIA's order affirming the decision of the IJ (No. 08-4139). In his brief, however, Ikharo does not challenge the BIA's denial of his motion to reconsider; in fact, he failed to even mention the motion to reconsider at all. We therefore conclude that Ikharo has waived any challenge to the BIA's denial of his motion. *See, e.g.*, *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation and internal quotation marks omitted)).

### III.   CONCLUSION

For all of the reasons set forth above, we **DENY** review of both the BIA's order affirming the decision of the IJ and the BIA's order denying Ikharo's motion to reconsider.