NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0851n.06

No. 10-3355

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Dec 16, 2011*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| NABIL ABDO SAIF, | ) | |
| | ) | |
| Petitioner–Appellant, | ) | |
| | ) | ON PETITION FOR REVIEW FROM |
| v. | ) | AN ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., | ) | |
| | ) | |
| Respondent–Appellee. | ) | |
| | ) | |

Before: CLAY, GIBBONS, and WHITE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Nabil Abdo Saif seeks review of a final order of removal from the Board of Immigration Appeals ("BIA") affirming the decision of an Immigration Judge ("IJ") that found him ineligible for asylum, withholding of removal, or relief under the Convention Against Torture and ordered him returned to Yemen. For the reasons set forth below, we deny the petition for review.

**I.**

Saif is a citizen of Yemen who entered the United States on July 27, 1995. He overstayed his visa, was ordered to appear before an IJ, and then filed a petition for asylum and withholding of removal. Saif made two principal claims in his application and at his removal hearing on May 19, 2008. First, Saif stated that he would be persecuted if he returned to Yemen, as he had changed his

-1-

religious beliefs and converted to the Baptist faith. Second, Saif claimed that he would be persecuted because he had voluntarily shared information with American officials in Yemen in the early 1990s about the perpetrators of the U.S. embassy bombing and had voluntarily shared information with FBI officials in the United States after the September 11, 2001 attacks.

The IJ denied Saif's application and ordered him removed. The IJ found that Saif was not credible with respect to his claim that he feared persecution on account of his religious beliefs. He noted that Saif would not answer certain questions and also cited inconsistencies between what Saif stated in his asylum application and what he related at the hearing. He further noted that Saif had not been baptized or become a member of the Baptist church, nor had Saif provided credible evidence of regular church attendance. The IJ found that the testimony of Saif's only witness, his ex-wife, lent little support to his claim, especially since she was financially dependent upon Saif and would be directly affected were he removed. Moreover, the IJ found that there was not sufficient evidence of a pattern or practice of persecution of Christian converts in Yemen, a finding unnecessary to his final ruling because he had found no credible evidence that Saif had indeed converted to Christianity. The IJ also found that Saif's second claim—that he feared persecution on account of his cooperation with American officials—lacked credibility and corroboration. Finally, he denied Saif's claims under the Convention Against Torture, as Saif had presented no evidence that he would be harmed upon his return to Yemen, let alone tortured.

The BIA affirmed and elaborated upon the decision of the IJ. With respect to Saif's claim that he feared persecution based upon his conversion to Christianity, the BIA found Saif's testimony "vague and non-responsive." The BIA noted that Saif had provided no documentary evidence of

regular church attendance, could not remember the name of one of the churches he supposedly attended, and could not remember the name of a neighbor with whom he went to church. The BIA also agreed with the IJ's determination that Saif had not provided any documentary evidence to support his claim that he spoke with American officials, documentary evidence that should have been readily available.

The BIA did find that the IJ had made some "unnecessary comments" about Saif's living arrangements and had insinuated that Saif had hidden evidence, but those comments did not undermine the conclusion that Saif's testimony was inconsistent and unsupported by adequate documentation. Accordingly, the BIA affirmed the IJ's decision to deny Saif's asylum, withholding of removal, and Torture Convention claims.

On appeal, Saif contests the denial of his withholding of removal claim and his Torture Convention claim; he does not contest the denial of his asylum claim. Saif argues (1) that the BIA erred in finding that he had not met his burden of proof for relief, due in large part to its finding that he lacked credibility and corroborating evidence; and (2) that his due process rights were violated.

This court has jurisdiction over final orders of removal pursuant to 8 U.S.C. § 1252. *Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005).

## II.

Under § 241(b)(3) of the Immigration and Naturalization Act, "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To qualify for withholding

of removal, an alien bears the burden of showing a "clear probability" of persecution. *Liti v. Gonzales*, 411 F.3d 631, 640–41 (6th Cir. 2005). The alien must, in other words, establish that "it is more likely than not that he . . . would be persecuted on account of [a protected ground] upon removal to that country." *Haider v. Holder*, 595 F.3d 276, 284 (6th Cir. 2010) (alterations in original) (quoting 8 C.F.R. § 208.16(b)(2)).

Similarly, to qualify for relief under the Convention Against Torture, an "alien must 'establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Dugboe v. Holder*, 644 F.3d 462, 472 (6th Cir. 2011) (quoting 8 C.F.R. § 1208.16(c)(2)). To qualify for relief under the Torture Convention, an alien need not demonstrate that the alleged harm will result from one of the enumerated five grounds (race, religion, nationality, social group, or political opinion), but he "must establish a 'particularized threat of torture.'" *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006) (citation omitted).

## A. Adverse Credibility Determination

Where the BIA reviews the IJ's decision and issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). To the extent the BIA adopted the IJ's reasoning, however, we also review the IJ's decision. *Id.* This court looks to whether the decisions of the IJ and the BIA are supported by substantial evidence. *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005). Under that standard, we may only reverse if their "decision was manifestly contrary to law, that is, if the evidence not only supports a contrary conclusion, but indeed *compels* it." *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1149 (6th Cir. 2010) (internal citations and quotation marks

omitted); 8 U.S.C. § 1252(b)(4)(B) (providing that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

An adverse credibility determination is a valid basis for denying an alien's claim. *See Vasha v. Gonzales*, 410 F.3d 863, 871–72 (6th Cir. 2005). Because findings of credibility are considered findings of fact, this court applies the substantial evidence standard. *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). Accordingly, "an adverse credibility finding is afforded substantial deference, [but] . . . must be supported by specific reasons." *Id.* at 926. "Under the REAL ID Act, credibility determinations are based on the 'totality of the circumstances' and should take into account 'all relevant factors.'" *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011).[1] These factors include

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii); *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009).

Here, sufficient evidence supports the finding that Saif was not credible. Both the IJ and the BIA noted several inconsistencies and weaknesses in Saif's testimony. Saif had told the IJ in 2006 that he would be baptized "soon" but then repeated the same statement to the IJ in 2008. The IJ

---

[1]The REAL ID Act applies to all applications for asylum, withholding of removal, or other forms of relief filed after May 11, 2005. *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009). Saif filed his application on April 25, 2006, and therefore the REAL ID Act applies to his case.

noted that on Saif's asylum application in 2006, he claimed he had been attending church "for about four years" but admitted in his testimony at the removal hearing that he had only attended church a handful of times prior to 2006. Moreover, as the BIA noted, Saif could not remember the name of one of the churches he supposedly attended and could not remember the name of a neighbor with whom he went to church. Overall, both the IJ and BIA found Saif's testimony non-responsive. These inconsistencies and weaknesses, contrary to Saif's assertions, are not minor: they go to whether Saif provided credible evidence that he had converted to Christianity, which served as a basis for his claim of fear of persecution.[2]

Further, Saif's corroborating evidence was particularly weak. Saif produced two nearly identical letters to document his church attendance, but each letter only confirmed that Saif had visited the church once and appear to be form letters sent to visitors, not regular church-goers. Saif failed to provide any reliable corroborating evidence that he had attended church regularly—either through a letter or a witness that could confirm his regular attendance. Saif's ex-wife did testify that Saif had regularly attended church starting in 2006 but, as the IJ noted, Saif's ex-wife was financially dependent upon him, and would be directly affected by his removal. The IJ was entitled, in his role as fact-finder, to accord her testimony less weight. *See Aichai Hu v. Holder*, 335 F. App'x 510, 515 (6th Cir. 2009) (holding that an IJ is required to assess the credibility of the witnesses who testify and to determine what weight their testimony deserves). Moreover, there was no evidence that Saif

---

[2]In any event, this court has recognized that the REAL ID Act's credibility standard "entitle[s] the IJ's overall adverse credibility determination to deference, regardless of whether the inconsistencies bear on the heart of [an applicant's] claim." *El–Moussa*, 569 F.3d at 256.

had been baptized or had become a member of the Baptist church. Taken alone, not being baptized or not being a member of the Baptist church would not be fatal to Saif's claim—but when combined with Saif's lack of credibility and documentary evidence, these facts are more compelling.[3]

The IJ's expectation that Saif produce corroborating information about regular church attendance was—in light of his lack of credibility—entirely permissible. *See Yan Chen v. Holder*, 423 F. App'x 557, 561 (6th Cir. 2011) ("Because the immigration judge found that [the applicant] was not credible, he could have properly determined that she was obligated to provide objective corroboration of her claims."); *see also Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) ("[W]here it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided.") (internal quotation marks and citation omitted). An IJ is "permitted to rely on the failure of an alien to present corroborating evidence when making a credibility determination and where there are also inconsistencies in the alien's testimony." *Ikharo v. Holder*, 614 F.3d 622, 634 (6th Cir. 2010). The BIA and IJ were thus permitted to rely in part on Saif's lack of reliable corroborative evidence in finding him not credible.

The inconsistencies and weaknesses in Saif's testimony, as well as the lack of corroborating evidence, led the IJ and BIA to find Saif not credible. Viewing the record in its entirety, a reasonable

---

[3]Saif incorrectly contends that the IJ and BIA questioned whether Saif was a Christian because he had not been baptized. First, that is not the case: at no time did either the IJ or the BIA hold that Saif's claim of religious conversion failed solely because he had not been baptized. And second, the only reason that the ritual of baptism became relevant was that Saif stated to the IJ in 2006 that he was going to get baptized "soon," a claim he repeated to the IJ in 2008.

fact-finder would not be compelled to reach a contrary conclusion. *See Cruz-Samayoa*, 607 F.3d at 1149; 8 U.S.C. § 1252(b)(4)(B). Therefore, we affirm the adverse credibility finding.

Because the same credibility standard applies to claims for withholding of removal and for relief under the Torture Convention, *El-Moussa*, 569 F.3d at 256, and because Saif bases his claim that it is more likely than not that he will be tortured on the same ground as his claim that it is more likely than not that he will be persecuted, *i.e.*, that he has converted to Christianity, the adverse credibility finding extends to both claims.[4] *See Berri v. Gonzales*, 468 F.3d 390, 398 (6th Cir. 2006). Further, because we affirm the adverse credibility finding, it is not necessary to reach the question whether the IJ's finding on country conditions was proper, as Saif failed to provide credible evidence that he had converted to Christianity and, therefore, would be at risk in Yemen.

## B.  Due Process

Saif further claims that the IJ violated his due process rights by "devaluing [Saif's] testimony in favor of facts created in his own mind from which he dr[ew] conclusions," and "disregard[ing]" evidence without reasoned explanation. It is undisputed that all applicants for withholding of removal or other forms of similar relief enjoy a Fifth Amendment right to a full and fair hearing. *Hachem v. Holder*, 656 F.3d at 435 (citing *Ndrecaj v. Mukasey*, 522 F.3d 667, 673 (6th Cir. 2008)); *see generally Reno v. Flores*, 507 U.S. 292, 306 (1993). In other words, aliens "are entitled to an unbiased arbiter who has not prejudged their claims." *Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th

---

[4]Saif does not contest the IJ's and BIA's finding that he insufficiently corroborated his alleged conversations with American officials in Yemen in the 1990s and in the United States after September 11, 2001. Saif has therefore waived the issue. *See Sec. Watch, Inc. v. Sentinel Sys., Inc.*,176 F.3d 369, 376 (6th Cir. 1999).

Cir. 2005). In order to prevail on a due process claim, an alien must establish both error and substantial prejudice. *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241 (6th Cir. 2007). We review allegations of violations of due process *de novo*. *Id.*

Saif claims that a number of the comments made by the IJ demonstrate that the IJ disregarded evidence, having already come to a pre-determined conclusion regarding those claims. As an initial matter, it is important to note that the BIA disagreed with some of the IJ's comments about which Saif now complains—specifically regarding Saif's living arrangements and marriages, his hiding of evidence, and his never attending church—and found them "unnecessary." We agree that these comments were unnecessary, but they do not demonstrate conscious disregard of evidence or bias in favor of the government. *See Hachem*, 656 F.3d at 435 (isolated sarcastic remark insufficient to show due process violation); *Hassan v. Gonzales*, 403 F.3d 429, 437 (6th Cir. 2005) (brusque language insufficient to show bias in favor of government).

Saif also claims that the following comments, unaddressed by the BIA, evince bias or conscious disregard of evidence: (1) the IJ's observation that Saif "crossed himself" like a Catholic and (2) the IJ's observation that Saif thought that merely shaking hands with a pastor made him a Christian. As to the first comment, it is unclear from the record what, if any, inference the IJ drew from his observation that Saif was crossing himself. But even if the inference was questionable (that, for instance, it is only appropriate for Catholics to cross themselves), it does not indicate that the IJ failed to consider fairly Saif's evidence—the touchstone of a due process violation. *See Ndrecaj*, 522 F.3d at 673 (finding no due process violation where there was "no evidence that [the IJ] did not fairly consider the [applicants'] evidence"). As to the second comment, the IJ's remark

that Saif thought that shaking hands with a pastor made him a Christian was merely a reflection of the fact that Saif had provided very little corroborative evidence of his regular church attendance. The comment was arguably sarcastic, but this court has found that such comments, standing alone, do not amount to a due process violation. *See Hachem*, 656 F.3d at 435; *Pepaj v. Mukasey*, 307 F. App'x. 891, 897–98 (6th Cir. 2009) ("Although the IJ's occasional sarcastic comments were unnecessary and inappropriate, a few such comments are not enough to show that an IJ was biased to the level of a due-process violation.").

Taking both the oral decision as well as the hearing transcript as a whole, there is insufficient evidence to show a due process violation. The IJ made some unnecessary comments at times, but overall he conducted a thorough and fair hearing. *Cf. Ahmed*, 398 F.3d at 726–27 (finding due process violation where IJ misstated and misunderstood applicant's testimony, confused witnesses, and then "largely based his denial of asylum on credibility findings based upon confused exchanges which were instigated by his own failure to understand correctly [the applicants'] answers to his questions"). Accordingly, we find that the IJ did not violate Saif's due process rights.

**III.**

For the foregoing reasons, we deny the petition for review.