**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 20a0619n.06**

**Case No. 19-3783**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MARIO REYES-ROMERO, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | **FILED** |
| v. | ) | Nov 02, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| WILLIAM P. BARR, Attorney General, | ) | **ON APPEAL FROM THE** |
| | ) | **BOARD OF IMMIGRATION** |
| *Respondent*. | ) | **APPEALS** |

Before: COLE, Chief Judge; BATCHELDER and STRANCH, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** The petitioner, Mario Reyes-Romero, seeks review of an order by the Board of Immigration Appeals (BIA) that dismissed his appeal from a decision by an immigration judge (IJ) denying his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We DENY the petition.

**I.**

Reyes-Romero is a 30-year-old native of El Salvador and citizen of both El Salvador and Honduras. He entered the United States without inspection in 2004, at age 14, and lived in New Jersey. In 2009, then age 19, he stabbed an unarmed man in the back during a brawl outside a party. Pursuant to a plea, the New Jersey Superior Court convicted him of second-degree aggravated assault, in violation of New Jersey Statute § 2C:12-1b(1), and sentenced him to three years in prison (with a minimum of 85% to be served) and post-release supervision. Following his release from prison, he apparently waived any challenge to removal and was removed to El

Salvador in August 2011. He was in El Salvador briefly, but returned to the United States in 2012. He did not pursue any administrative or judicial means of obtaining lawful readmittance.

In October 2017, the Department of Homeland Security (DHS) found Reyes-Romero in Pennsylvania and indicted him for illegal reentry, in violation of 8 U.S.C. § 1326. He moved to dismiss the indictment, arguing that his prior removal was invalid and, therefore, could not support an illegal-reentry conviction. The District Court for the Western District of Pennsylvania (hereinafter the "District Court") held extensive evidentiary hearings and agreed, finding (1) that DHS agents had falsified his waiver back in 2011, and (2) that Reyes-Romero had shown a "likelihood of success" on his claims of asylum, withholding, or CAT relief; i.e., harm and prejudice sufficient to invalidate the 2011 administrative removal and dismiss the pending indictment. *United States v. Reyes-Romero*, 327 F. Supp. 3d 855 (W.D. Pa. 2018). The District Court explained its findings and conclusions, but also said that it "reache[d] no conclusion as to whether [Reyes-Romero] can, should, or will now be removed from the United States in a manner consistent with federal law." *Id*. at 866; 902-03 ("Whether [Reyes-Romero] will be subject to new [immigration] proceedings aimed at now effectuating his removal from the United States in conformity with the law is a matter in the next instance for the administrative immigration process, with judicial review of those proceedings at the United States Court of Appeals.").

Following the dismissal of the criminal charge, the DHS began removal proceedings before an IJ in Cleveland because Reyes-Romero was being held in a Youngstown, Ohio, detention facility. The IJ conducted multiple hearings, admitted volumes of evidence and testimony, and ultimately rendered a written decision. In that decision, the IJ summarized the evidence, the DHS's charges, and Reyes-Romero's claims for relief. Reyes-Romero admitted that he, a non-citizen, had entered the United States without admission or authorization, but denied his prior criminal conviction on the basis that it was not legally significant because the District Court had opined—

based on then-controlling (but since overruled) Third Circuit case law—that New Jersey's second-degree aggravated assault was not a "particularly serious crime" that would statutorily prohibit asylum or withholding. The IJ established Reyes-Romero's conviction for second-degree aggravated assault, in violation of N.J.S. § 2C:12-1b(1), as the DHS asserted, and determined that it was a crime involving moral turpitude under the categorical approach. The IJ found Reyes-Romero removable pursuant to INA §§ 212(a)(6)(A)(i) (present without admission or parole) and 212(a)(2)(A)(i)(I) (crime involving moral turpitude).

Turning to Reyes-Romero's claims for relief, the IJ found that he and his supporting witnesses were credible and accepted their testimony at face value. Nonetheless, the IJ held that the aggravated assault was a "particularly serious crime" that barred asylum and withholding under INA § 208(b)(2)(A)(ii), INA § 241(b)(3)(B)(ii), and C.F.R. § 1208.16(d)(2). *See Matter of N-A-M-*, 24 I&N Dec. 336 (BIA 2007); *Matter of M-H-*, 26 I&N Dec. 46 (BIA 2012). Reyes-Romero relied on the District Court's determination, which was based on *Alaka v. Attorney General*, 456 F.3d 88, 104 (3d Cir. 2006), that "particularly serious crimes" are only those felonies expressly defined in 8 U.S.C. § 1101(a)(43), which would not cover Reyes-Romero's aggravated assault because that conviction did not mandate at least five years in prison. The IJ rejected this argument for two reasons. One, under *Chevron* deference, the BIA's interpretation supersedes a circuit court's and the BIA had held—in express rejection of *Alaka*—that even offenses that are not aggravated felonies may be "particularly serious crimes," based on the nature of the crime actually committed and the circumstances underlying the conviction. *See N-A-M-*, 24 I&N Dec. at 342; *M-H-*, 26 I&N Dec. at 49. And, two, the immigration proceeding was not in the Third Circuit; it was in the Sixth Circuit, which uses the BIA's case-by-case approach. *See Ikharo v. Holder*, 614 F.3d 622, 633 (6th Cir. 2010). Also, after the IJ and BIA ruled in this case, the en banc Third Circuit overruled *Alaka*. *See Bastardo-Vale v. Attorney General*, 934 F.3d 255, 258 (3d Cir. 2019).

Even after holding that the conviction barred asylum or withholding, the IJ also found that Reyes-Romero failed to prove a "well-founded fear" or "clear probability" of future persecution in El Salvador or Honduras due to his family membership or his anti-gang political position, which were his claimed "particular social groups." Thus, even if relief were not barred by the criminal conviction, the claims failed on the merits. The IJ further found that Reyes-Romero failed to prove "that it is more likely than not that he will be tortured if removed to El Salvador or Honduras," and denied CAT relief. And the IJ held that the conviction, being a crime involving moral turpitude, statutorily barred cancellation of removal. Therefore, the IJ ordered Reyes-Romero removed to El Salvador.

On direct appeal, the BIA analyzed his arguments and dismissed his appeal. Reyes-Romano conceded removability under INA §§ 212(a)(6)(A)(i) (present without admission or parole) and that he was ineligible for cancellation of removal, so the BIA declined to address those issues. Reyes-Romano's principal argument was that collateral estoppel (issue preclusion) required the IJ to accept certain findings and conclusions made by the District Court, namely that his aggravated-assault conviction was not a particularly serious crime (meaning that it would not bar his claims for relief). The BIA disagreed and gave three reasons. One, the District Court had expressly denied that it was dictating any findings or conclusions for a potential forthcoming removal proceeding before an IJ. Two, the District Court's holding was that, because the DHS agents' misconduct prevented Reyes-Romano from raising his presumptively successful claims for relief back in 2011, he must be permitted to raise those claims to the IJ in a new removal proceeding without the DHS's relying on the 2011 administrative removal, and that is exactly what happened in these all-new removal proceedings before the IJ. And, three, the District Court's determination that the aggravated assault was not a particularly serious crime was not necessary or essential to its judgment on the merits, so that ruling was not entitled to collateral estoppel.

The BIA then adopted and affirmed the IJ's findings, analysis, and determination that Reyes-Romano is not eligible for asylum, withholding, or CAT relief, because his criminal conviction prohibits it. Furthermore, the BIA held that the IJ did not commit legal error or clear factual error in finding that the record evidence did not show that Reyes-Romano would likely be tortured with the consent or acquiescence of the government in El Salvador or Honduras. Based on these findings and conclusions, the BIA dismissed the appeal. Reyes-Romero seeks review.

## II.

Reyes-Romero's first claim is that the BIA erred by refusing to apply issue preclusion to certain rulings by the District Court in his criminal case. Specifically, he argues that three rulings were determinative to the District Court's decision to dismiss the indictment for illegal reentry and are, therefore, entitled to issue preclusion: (1) his aggravated assault did not qualify as a "particularly serious crime" that would bar relief; (2) he is at risk of persecution in El Salvador or Honduras due to his membership in either of two "particular social groups," a family in which members testified against rapists and those holding anti-gang beliefs; and (3) that he is entitled to asylum, withholding, and CAT relief.[1] The first of these is a purely legal determination and was based on a Third Circuit legal proposition that was never binding in the Sixth Circuit (as it contradicted Sixth Circuit precedent) and has since been repudiated and expressly overruled.

> Under the doctrine of issue preclusion, a prior judgment forecloses successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment. Even when the elements of issue preclusion are met, however, an exception may be warranted if there has been an intervening change in the applicable legal context. The change-in-law exception recognizes that applying issue preclusion in changed circumstances may not advance the equitable administration of the law. . . . At a minimum, a repudiated decision does not retain preclusive force.

---

[1] Reyes-Romero overstates this. The District Court found that he was "reasonably likely to succeed" on his asylum, withholding, and CAT claims for relief, which is short of holding that he did succeed.

*Herrera v. Wyoming*, 139 S. Ct. 1686, 1697-98 (2019) (quotation marks, editorial marks, and citations omitted) (citing *Limbach v. Hooven & Allison Co.*, 466 U.S. 353, 363 (1984) (refusing to find a party bound by "an early decision based upon a now repudiated legal doctrine")).

The District Court said that Reyes-Romero's aggravated assault was not a "particularly serious crime" based on *Alaka*, 456 F.3d at 104, which had held that "particularly serious crimes" are limited to only aggravated felonies. But the en banc Third Circuit has expressly overruled *Alaka* and held that, under the BIA's case-by-case approach, the phrase "particularly serious crimes" includes but is not limited to aggravated felonies. *Bastardo-Vale*, 934 F.3d at 258. This repudiation of *Alaka* means that the District Court's ruling does not have preclusive effect.

Thus, we need not address the effect of the District Court's express disclaimer (i.e., that it was not deciding issues for the immigration court) or whether an out-of-circuit district court's purely legal decision ever had preclusive effect in either the Sixth Circuit Court of Appeals (which has contrary precedent, *see Ikharo*, 614 F.3d at 633 (applying BIA's case-by-case approach)) or the immigration courts operating within the Sixth Circuit.[2] Nor do we need to address whether Reyes-Romero's two other cited rulings have preclusive effect, given that this "particularly serious crime" statutorily bars Reyes-Romero from relief via asylum, withholding, or CAT.

This claim necessarily fails.

Next, Reyes-Romero claims that, because the DHS agents' misconduct of falsifying his waiver, which led to his administrative removal in 2011, warrants *nunc pro tunc* relief, the panel should order the BIA to use its "equitable power to grant an order now as if it were granted sometime in the past," specifically back in 2011. *See Ramirez-Canales v. Mukasey*, 517 F.3d 904,

---

[2] The government argues that the District Court had no jurisdiction to decide whether the aggravated assault was a "particularly serious crime" because the immigration courts hold exclusive jurisdiction over such issues, subject to review by the federal courts of appeal, *see* 8 U.S.C § 1252(a)(5) & (b)(9), and because the INA authorizes the Attorney General to decide what constitutes a "particularly serious crime," *see* §§ 1158(b)(2)(A) & 1231(b)(3)(B), though the Attorney General has delegated that authority to the immigration courts, *see* 8 C.F.R. § 1003.10. But, as with the other issues, because the repudiation of the law bars issue preclusion, we need not address this argument.

910 (6th Cir. 2008) ("As an equitable power, its scope is broad, and should be applied as justice requires so long as it is not barred by statute."). As we explained in *Ramirez-Canales*:

> While the equitable power to grant orders *nunc pro tunc* is conceptually broad, its actual application by the Board appears to be limited to two general situations. First, the Board uses the power to retroactively grant the Attorney General's discretion to permit an alien to reapply for admission after being deported and subsequently reentering the country. Second, the Board uses the power to apply the law as it existed at the time of the violation instead of current law.

*Id*. (citations omitted). Obviously, Reyes-Romero is invoking the second situation.

There are two obvious and significant problems with Reyes-Romero's claim. One is that there has been no change in *Sixth Circuit* law; for Reyes-Romero to obtain relief from removal, the panel (and the BIA) would have to apply Third-Circuit law (as of 2011) in contravention of contemporaneous, controlling Sixth Circuit precedent. That is, even analyzing Reyes-Romero's claims as of 2011, he was then, as now, barred from relief under Sixth Circuit precedent.

The other problem is that the District Court ruled that, due to the DHS agents' misconduct, Reyes-Romero was entitled—as his remedy—to a "clean" removal hearing in the immigration court, so that he could raise his claims for relief to an IJ without limitation due to the 2011 administrative removal. And that is exactly what happened in this case. The District Court did not even suggest, much less hold, that he was entitled to *nunc pro tunc* relief; in fact, the District Court stated expressly that determination of his removability was for the immigration court.

This claim necessarily fails.

Reyes-Romero also claims that the BIA erred by refusing to grant him asylum or withholding. That is, he argues that the IJ and BIA erred on the merits of his claims by finding that he failed to prove a "well-founded fear" or "clear probability" of future persecution in El Salvador or Honduras based on his family membership or his anti-gang political position, which were his asserted and argued "particular social groups." But because Reyes-Romero committed a

7

"particularly serious crime," he is barred by statute from receiving asylum or withholding. *See N-A-M-*, 24 I&N Dec. at 342; *M-H-*, 26 I&N Dec. at 49.

Even if he were not barred by statute, based on the record evidence, the IJ did not clearly err in reaching its decision that Reyes-Romero failed to prove a "well-founded fear" or "clear probability" of future persecution if returned to El Salvador or Honduras.

This claim necessarily fails.

Finally, Reyes-Romero claims the BIA erred by denying him CAT relief. That is, he argues that the IJ and BIA erred on the merits of his claim by finding that he failed to prove "that it is more likely than not that he will be tortured if removed to El Salvador or Honduras." But, because he committed a "particularly serious crime," he is barred by statute from CAT relief. *See N-A-M-*, 24 I&N Dec. at 342; *M-H-*, 26 I&N Dec. at 49.

Even if he were not barred by statute, based on the record evidence, the IJ did not clearly err in reaching its decision that Reyes-Romero failed to prove "that it is more likely than not that he will be tortured if removed to El Salvador or Honduras."

This claim necessarily fails.

### III.

For the foregoing reasons, we DENY the petition for review.