*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0202p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee,*

     *v.*

No. 09-5806

TYRONE MCMURRAY,

          *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 06-00237-001—Aleta Arthur Trauger, District Judge.

Argued: January 18, 2011

Decided and Filed: August 4, 2011

Before: MOORE, GIBBONS, and McKEAGUE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** David L. Cooper, THE LAW OFFICE OF DAVID L. COOPER, P.C., Nashville, Tennessee, for Appellant. Brooklyn D. Sawyers, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** David L. Cooper, THE LAW OFFICE OF DAVID L. COOPER, P.C., Nashville, Tennessee, for Appellant. Brent A. Hannafan, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

     MOORE, J., delivered the opinion of the court, in which GIBBONS, J., joined. McKEAGUE, J. (pp. 21–30), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

     KAREN NELSON MOORE, Circuit Judge. Defendant Tyrone McMurray was convicted at a bench trial of violating the federal felon-in-possession-of-a-firearm statute. He now appeals his 180-month sentence of imprisonment—the statutorily

1

mandated minimum as a result of the district court's determination that McMurray qualifies to be sentenced under the Armed Career Criminal Act ("ACCA"). McMurray argues that (1) the predicate felony convictions for the ACCA must be included in the indictment and proven beyond a reasonable doubt, and (2) his 1993 felony conviction for aggravated assault is not a "violent felony" under the ACCA. Because Tennessee's aggravated-assault statute is not categorically a "violent felony" and because the available *Shepard* documents do not establish the nature of McMurray's conviction, we **VACATE** the judgment of the district court and **REMAND** for resentencing consistent with this opinion.

## I. BACKGROUND & PROCEDURE

On December 20, 2006, McMurray was indicted on one charge of violating the federal felon-in-possession-of-a-firearm statute, 18 U.S.C. § 922(g)(1). After McMurray waived his right to a jury trial, the district court conducted a bench trial and found McMurray guilty. Prior to sentencing, U.S. Probation Services prepared a Presentence Investigation Report ("PSR"), which concluded that McMurray had been convicted of three prior violent felonies and therefore qualified for a sentence enhancement under the ACCA, 18 U.S.C. § 924(e). Specifically, the PSR concluded that McMurray qualified as an armed career criminal based on the following Tennessee convictions: (1) aggravated assault in 1986, (2) armed robbery in 1987, and (3) aggravated assault in 1993.

McMurray challenged the application of the ACCA for the two reasons that he now asserts on appeal. At a sentencing hearing held on June 17, 2009, however, the district court rejected McMurray's arguments that he did not qualify for an enhancement under the ACCA. On June 19, 2009, the district court entered its judgment, sentencing McMurray to 180 months of imprisonment, the statutorily mandated minimum under the ACCA.

## II.  ANALYSIS

### A.  Armed Career Criminal Act

McMurray faced a maximum prison term of ten years for violating 18 U.S.C. § 922(g), the felon-in-possession-of-a-firearm statute.  18 U.S.C. § 924(a)(2).  Pursuant to the ACCA, however, a defendant convicted under § 922(g) who "has three previous convictions . . . for a violent felony or a serious drug offense, or both," must be sentenced to "not less than15 years" of imprisonment.  *Id.* § 924(e)(1).  A "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  *Id.* § 924(e)(2)(B).

### B.  Constitutional Challenges

McMurray first argues that violating the ACCA is "a separate criminal offense," and, therefore, pursuant to the Due Process Clause, the predicate felony convictions must be included in the indictment and proven beyond a reasonable doubt.  Appellant Br. at 11.  He argues that his "conviction for being an armed career criminal felon should be vacated."  *Id.*

We review de novo challenges to the sufficiency of an indictment.  *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999).  We have rejected the argument that the ACCA sentencing provision is a separate offense and that the government must plead in the indictment and prove beyond a reasonable doubt the predicate felonies.  *United States v. Wolak*, 923 F.2d 1193, 1199 (6th Cir.), *cert. denied*, 501 U.S. 1217 (1991); *United States v. Brewer*, 853 F.2d 1319, 1322 (6th Cir. 1988) (on reh'g) (analyzing antecedent statute to the ACCA), *cert. denied*, 488 U.S. 946 (1988), 489 U.S. 1021 (1989).  That the ACCA is a sentence enhancement rather than a separate offense is well established.  *See, e.g.*, *Custis v. United States*, 511 U.S. 485, 490 (1994) ("The ACCA provides an enhanced sentence . . . ."); *Taylor v. United States*, 495 U.S. 575, 577 (1990)

("[The ACCA] provides a sentence enhancement . . . ."). Thus, McMurray's due-process challenge to the ACCA may be more appropriately construed as a constitutional challenge to his sentence—which we also review de novo. *United States v. Martin*, 526 F.3d 926, 941 (6th Cir.), *cert. denied*, 129 S. Ct. 305 (2008). We have observed that due process does not require the government to provide prior notice of its intention to seek a sentence enhancement under the ACCA. *United States v. Mauldin*, 109 F.3d 1159, 1163 (6th Cir. 1997); *United States v. Miller*, 371 F. App'x 646, 649–50 (6th Cir. 2010) (unpublished decision); *accord United States v. Mack*, 229 F.3d 226, 231 (3d Cir. 2000) (collecting cases holding the same), *cert. denied*, 532 U.S. 1045 (2001).

The Supreme Court, in *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998), held that when a statute constitutes a penalty provision, rather than a separate crime, the government need not include the provision in the indictment. "[T]he Supreme Court has uniformly excepted 'the fact of a prior conviction' from its general rule that sentence-enhancing facts must be found by a jury and proved beyond a reasonable doubt." *Martin*, 526 F.3d at 941 (citing *United States v. Booker*, 543 U.S. 220, 244 (2005); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). McMurray challenges the continuing validity of *Almendarez-Torres*, but, in *Martin*, 526 F.3d at 941–42, we concluded that this court remains bound by *Almendarez-Torres* despite statements in *Shepard v. United States*, 544 U.S. 13 (2005), suggesting that it is no longer good law. Counsel for McMurray acknowledged at oral argument that we remain bound by *Martin*. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel.").

We therefore reject McMurray's constitutional challenges to the enhancement of his sentence under the ACCA.

**C.     Whether Tennessee Crime of Aggravated Assault Is a "Violent Felony" Under the ACCA**

McMurray also challenges the district court's determination that his 1993 Tennessee conviction for aggravated assault, TENN. CODE ANN. § 39-13-102 (1991), qualifies as a "violent felony" under the ACCA because the Tennessee statute

encompasses reckless conduct. We review de novo the district court's determination that a prior conviction qualifies as a "violent felony" under the ACCA. *United States v. Gross*, 624 F.3d 309, 322 (6th Cir. 2010). The two-step analysis for determining whether a prior conviction qualifies as a "violent felony" is well established[1]:

> In determining the nature of a prior conviction, we are to apply a "categorical" approach, looking to the statutory definition of the offense and not the particular facts underlying the conviction. *Taylor v. United States*, 495 U.S. 575, 600 (1990). If it is possible to violate the statute in a way that would constitute a ["violent felony"] and in a way that would not, the court may consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction. *Shepard v. United States*, 544 U.S. 13, 26 (2005).

*United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010).

### 1. *Taylor* Categorical Analysis of Tennessee's Aggravated-Assault Statute

McMurray pleaded guilty to aggravated assault on April 29, 1993. At that time, the Tennessee statute for aggravated assault was as follows:

(a)   A person commits aggravated assault who:

  (1)   Commits an assault as defined in § 39-13-101 and:

    (A)   Causes serious bodily injury to another; or

    (B)   Uses or displays a deadly weapon; or

  (2)   Being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect such child or adult from an aggravated assault described in subsection (a); or

  (3)   After having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury

---

[1]Whether a conviction is a "violent felony" under the ACCA is analyzed in the same way as whether a conviction is a "crime of violence" under the United States Sentencing Guidelines ("U.S.S.G.") § 4B1.2(a). *United States v. Gibbs*, 626 F.3d 344, 352 n.6 (6th Cir. 2010).

or in any way committing or attempting to commit an assault against an individual or individuals, attempts to cause or causes bodily injury or commits or attempts to commit an assault against such individual or individuals.

(b)  Aggravated assault is a Class C felony. . . .

TENN. CODE ANN. § 39-13-102 (1991).**2**  Tennessee's assault statute at that time, TENN. CODE ANN. § 39-13-101 (1991), provided in relevant part:

(a)  A person commits assault who:

   (1)  Intentionally, knowingly or recklessly causes bodily injury to another;

   (2)  Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

   (3)  Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tennessee's aggravated-assault statute, both the version effective at the time of McMurray's conviction and the current version, encompasses a wide range of conduct, such as hitting and choking the victim while threatening her with a gun, *State v. Hammonds*, 30 S.W.3d 294, 297 (Tenn. 2000), and reckless driving resulting in a collision that causes serious bodily injury to another, *State v. Gillon*, 15 S.W.3d 492, 496–97 (Tenn. Crim. App. 1997).

McMurray argues that because the aggravated-assault statute encompasses reckless conduct, his conviction does not qualify as a "violent felony."  First, we note that this court concluded, in the analogous context of a "crime of violence" under

---

**2**Effective May 12, 1993, Tennessee deleted § 39-13-102 in its entirety and replaced it with a new section.   1993 Tenn. Legis. Serv. 306 (West).   Most significantly, the new section reordered the subsections to break out reckless aggravated assault, § 39-13-102(a)(2) (2010), from intentional and knowing aggravated assault, § 39-13-102(a)(1) (2010), and reclassified reckless aggravated assault as a Class D felony, § 39-13-102(e)(1).   Substantively, however, the new section encompasses essentially the same conduct as the section effective at the time of McMurray's conviction.

18 U.S.C. § 16,[3] that reckless aggravated assault under the use-or-display-of-a-deadly-weapon prong nevertheless requires intentional conduct. *United States v. Mendoza-Mendoza*, 239 F. App'x 216, 219–21 (6th Cir. 2007) (unpublished decision), *cert. denied*, 552 U.S. 1121 (2008). We assume, without deciding, that the analysis of *Mendoza-Mendoza* extends to the ACCA, and therefore consider, for purposes of this analysis, reckless aggravated assault under the serious-bodily-injury prong, § 39-13-102(a)(1)(A) (1991). Because aggravated assault is not an enumerated crime,[4] we analyze whether recklessly causing serious bodily injury to another meets either the "use of physical force" clause, 18 U.S.C. § 924(e)(2)(B)(i), or the "otherwise" clause, *id.* § 924(e)(2)(B)(ii), of the ACCA's definition of a "violent felony." *See United States v. Sanders*, 470 F.3d 616, 621 n.4 (6th Cir. 2006) (emphasizing that a crime can be a "violent felony" under *either* clause).

### a. "Use of Physical Force" Clause

We first consider whether recklessly causing serious bodily injury to another, § 39-13-102(a)(1)(A) (1991), "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). We find the decisions in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), and *United States v. Portela*, 469 F.3d 496 (6th Cir. 2006), instructive.

In *Leocal*, the Supreme Court considered whether a Florida conviction for driving under the influence ("DUI") and causing serious bodily injury qualifies as a

---

[3] A "crime of violence" under 18 U.S.C. § 16 is defined as
  (a)  an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
  (b)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

[4] Because aggravated assault is not an enumerated crime under the ACCA, the analysis of the generic definition of aggravated assault in other contexts in which it is an enumerated crime is not directly relevant. *Compare Mendoza-Mendoza*, 239 F. App'x at 222 (adopting reasoning of *United States v. Mungia-Portillo*, 484 F.3d 813, 817 (5th Cir. 2007), *cert. denied*, 552 U.S. 931 (2007), which concluded that Tennessee's aggravated-assault statute falls within the generic aggravated-assault crime enumerated in U.S.S.G. § 2L1.2's definition of "crime of violence"), *with United States v. Esparza-Herrera*, 557 F.3d 1019, 1025 (9th Cir. 2009) (concluding that Arizona's aggravated-assault statute does not fall within the generic aggravated-assault crime enumerated in U.S.S.G. § 2L1.2's definition of "crime of violence").

"crime of violence" under 18 U.S.C. § 16.  543 U.S. at 3.  In its analysis of the statute's "use of force" clause, § 16(a), which is in relevant part identical to the "use of force" clause of the ACCA, § 924(e)(2)(B)(i), the Court relied on its decision in *Bailey v. United States*, 516 U.S. 137 (1995), to conclude that "'use' requires active employment" and "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal*, 543 U.S. at 9.  The Court reasoned that "[w]hile one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident." *Id.*  Because Florida's DUI statute did not require proof of a particular mental state, the Court concluded that the defendant's DUI conviction was not a "crime of violence" under the "use of force" prong of § 16.  *Id.* at 7, 10.  The Court, however, expressly indicated that it was not deciding whether a statute that encompasses reckless conduct qualifies as a "crime of violence." *Id.* at 13.

In *Portela*, we answered the question left open by *Leocal* when considering whether a Tennessee conviction for vehicular assault, TENN. CODE ANN. § 39-13-106, qualified as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii).[5]  469 F.3d at 498–99.  Under the Tennessee statute, "[a] person commits vehicular assault who, as the proximate result of the person's intoxication . . . *recklessly* causes serious bodily injury to another person by the operation of a motor vehicle." TENN. CODE ANN. § 39-13-106(a) (emphasis added).  We relied on the analysis in *Oyebanji v. Gonzales*, 418 F.3d 260 (3d Cir. 2005) (Alito, J.), and *Bejarano-Urrutia v. Gonzales*, 413 F.3d 444 (4th Cir. 2005), which applied *Leocal*'s reasoning to convictions involving reckless conduct, and we concluded that the defendant's conviction for vehicular assault was not a "crime of violence" under § 2L1.2(b)(1)(A)(ii). *Portela*, 469 F.3d at 499.  In the context of § 16, the extension of *Leocal*'s reasoning to conclude that reckless conduct does not constitute a "crime of violence" has found overwhelming support in our sister circuits. *See United States v. Zuniga-Soto*, 527 F.3d 1110, 1124 (10th Cir. 2008) (listing cases).  We find the

---

[5]The commentary to § 2L1.2 defines "crime of violence" by enumerating a number of crimes and including a catch-all "use of force" clause: "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

reasoning of *Portela* and the cases on which it relies equally persuasive in the context of the ACCA.

We further note that the Supreme Court has applied the reasoning in *Leocal* to the context of interpreting the ACCA's "use of force" clause. *See Johnson v. United States*, --- U.S. ---, 130 S. Ct. 1265, 1271 (2010). In *Johnson*, the Court quoted and applied *Leocal*'s analysis that "'[t]he ordinary meaning of [the term "crime of violence"], combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes.'" *Johnson*, 130 S. Ct. at 1271 (quoting *Leocal*, 543 U.S. at 11). Whereas the Court in *Johnson* focused on the question of the degree of physical force required to qualify as a "violent felony"—the "violent" aspect of the *Leocal* Court's "violent, active crimes" characterization—we focus on the "active" aspect of the *Leocal* Court's characterization.[6] Thus, pursuant to *Leocal* and *Portela*, we conclude that the "use of physical force" clause of the ACCA, § 924(e)(2)(B)(i), requires more than reckless conduct.

---

[6]Although our decision rests on the Tennessee statute's inclusion of reckless conduct, we also question whether the aggravated-assault statute's requirement that a person "cause[] serious bodily injury," § 39-13-102(a)(1)(A) (1991), necessarily requires the "use of physical force," § 924(e)(2)(B)(i). Except in cross-reference to "intentionally or knowingly caus[ing] physical contact with another [that] a reasonable person would regard . . . as extremely offensive or provocative," § 39-13-101(a)(3) (1991), aggravated assault under § 39-13-102(a)(1)(A) (1991) does not require any degree of contact or use of force. *Compare United States v. Mansur*, 375 F. App'x 458, 463–64 (6th Cir. 2010) (unpublished opinion) (concluding that Ohio statute for robbery, which states that "'[n]o person in attempting or committing a theft offense . . . shall use or threaten the immediate use of force against another,'" was a "violent felony" under the "use of force" clause (quoting OHIO REV. CODE ANN. § 2911.02)), *cert. denied*, 130 S. Ct. 3377 (2010). Rather, one commits aggravated assault under § 39-13-102(a)(1)(A) by causing serious bodily injury, "no matter how slight" the defendant's use of force. *Johnson*, 130 S. Ct. at 1270 (internal quotation marks omitted). Although we might expect that someone who causes serious bodily injury to another did so with a strong physical force, the statute does not require it. *Cf. State v. Baggett*, 836 S.W.2d 593, 595–96 (Tenn. Crim. App. 1992) (affirming defendant's conviction for aggravated assault when the defendant placed the unconscious victim in the middle of the road and a passing car ran him over, causing serious bodily injury). Tennessee also does not define "serious bodily injury" to require any particular degree of contact. *See State v. Parker*, No. M2009-02448-CCA-R3-CD, 2011 WL 51734, at *17 (Tenn. Crim. App. Jan. 6, 2011) (unpublished decision) (defining "serious bodily injury"). *Compare United States v. Flores-Gallo*, 625 F.3d 819, 822–24 (5th Cir. 2010) (concluding that Kansas's aggravated-battery statute, which requires that the defendant intentionally cause bodily harm, has as an element the threatened use of physical force in part because the Kansas common law defines "bodily harm" as contact "with physical force, in an intentional hostile and aggravated manner" (internal quotation marks omitted)). Thus, we question whether the Tennessee statute's requirement that a person "cause[] serious bodily injury," § 39-13-102(a)(1)(A) (1991), necessarily has as an element the "use of physical force," § 924(e)(2)(B)(i). *But see United States v. Vinton*, 631 F.3d 476, 485–86 (8th Cir. 2011) (concluding that Missouri's second-degree-assault statute, which "requires a showing that the defendant attempted to cause, or knowingly caused, physical injury to another person," has as an element the use or attempted use of physical force).

Finally, in *United States v. Benton*, 639 F.3d 723 (6th Cir. 2011), this court recently analyzed the question whether the Tennessee crime of solicitation to commit aggravated assault is a "violent felony" under the ACCA.  The court also stated that "[i]t has already been established that the crime of aggravated assault has as an element the use or threat of force, and therefore qualifies as a 'violent felony' for ACCA purposes." *Id.* at 730 & n.3 (citing *United States v. Matthews*, 278 F.3d 560, 563 (6th Cir.), *cert. denied*, 535 U.S. 1087 (2002)).  As discussed below in Part II.C.1.b, we read the holding of *Matthews* to rest on the "otherwise" clause of the "violent felony" definition. Nevertheless, even if considered under the "use of physical force" clause, our decision in *Matthews* is equally inconsistent with the Supreme Court's subsequent decision in *Leocal* as it is under the "otherwise" clause with respect to *Begay v. United States*, 553 U.S. 137 (2008).  Because the statement in *Benton* with respect to aggravated assault—made within its analysis of the distinct crime of solicitation to commit aggravated assault—"was not necessary to the outcome" in that case,[7] it is dicta that is not binding.  *See United States v. Turner*, 602 F.3d 778, 786 (6th Cir. 2010) (internal quotation marks omitted); *accord BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 750 (6th Cir. 2010) ("One panel of the Sixth Circuit is not bound by dicta in a previously published panel opinion." (alterations omitted) (internal quotation marks omitted)); *PDV Midwest Refining, L.L.C. v. Armada Oil & Gas Co.*, 305 F.3d 498, 510 (6th Cir. 2002) ("'Strictly speaking an obiter dictum is a remark made or opinion expressed by a judge, in his decision upon a cause, by the way—that is, incidentally or collaterally, and not directly upon the question before the court . . . .'" (quoting *Black's Law Dictionary* 1100 (7th ed. 1999) (alteration in original))), *cert. denied*, 537 U.S. 1111 (2003).

We conclude that the Tennessee crime of aggravated assault is not a "violent felony" under the "use of physical force" clause of the ACCA.

---

[7]The *Benton* panel explicitly recognized that whether the distinct crime of "aggravated assault constitutes a 'violent felony[]' . . . does not automatically mean that solicitation constitutes the same." 639 F.3d at 731.  Rather, *Benton*'s holding that the solicitation crime does not constitute a "violent felony" under the "use of physical force" clause rested on "a plain reading of the statutory definition of solicitation to commit aggravated assault." *Id.*

### b.  "Otherwise" Clause

We next consider whether recklessly causing serious bodily injury to another, § 39-13-102(a)(1)(A) (1991), "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).  A number of years ago, applying then-prevailing law, we concluded that a conviction for reckless aggravated assault in Tennessee is a "violent felony" under the "otherwise clause."[8] *Matthews*, 278 F.3d at 563 ("Reckless aggravated assault certainly 'presents' a serious risk of injury to its victim.").  In *Begay*, 553 U.S. 137, however, the Supreme Court held that the "otherwise" clause of the "violent felony" definition, 18 U.S.C. § 924(e)(2)(B)(ii), includes only those crimes similar to the enumerated crimes—burglary, arson, extortion, and crimes involving explosives—"rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Begay*, 553 U.S. at 142.  Thus, to qualify as a "violent felony" under the "otherwise" clause, the crime must "involve purposeful, violent, and aggressive conduct."[9]  *Id.* at 144–45 (internal quotation marks omitted); *accord United States v. Baker*, 559 F.3d 443, 453 (6th Cir. 2009) (vacating sentence and remanding to the district court for resentencing on the issue of whether the defendant's prior Tennessee conviction for reckless endangerment qualifies as a "crime of violence" in light of *Begay*); *cf. Benton*, 639 F.3d at 732 (concluding that the Tennessee crime of solicitation to commit aggravated assault is a "violent felony" under the ACCA because solicitation "involves purposeful conduct, requiring as an element that the perpetrator act 'with the intent that the criminal offense be committed'" (quoting TENN. CODE ANN. § 39-12-102)).  Accordingly, after *Begay*,

---

[8]In *United States v. Stanback*, 166 F. App'x 190, 192 (6th Cir. 2006) (unpublished decision), we also concluded that a prior conviction under Tennessee's aggravated-assault statute "clearly constitutes a 'crime of violence'" under the Sentencing Guidelines but did not explain under which clause we based that conclusion.

[9]In its recent decision in *Sykes v. United States*,--- U.S. ---, 131 S. Ct. 2267, 2275–76 (2011), the Supreme Court retreated to some degree from *Begay*'s "purposeful, violent, and aggressive" standard. Nevertheless, the Court indicated that the *Begay* standard remains applicable when the felony is a strict liability, negligence, or recklessness crime. *Id.* at 2276; *see also id.* at 2277 (Thomas, J., concurring in the judgment) ("[T]he majority errs by implying that the 'purposeful, violent, and aggressive' test may still apply to offenses 'akin to strict liability, negligence, and recklessness crimes.'"); *id.* at 2285 (Scalia, J., dissenting) ("[T]he Court now suggests [that the *Begay* test] applies only 'to strict liability, negligence, and recklessness crimes.").

reckless aggravated assault no longer qualifies as a "violent felony" under the "otherwise" clause of § 924(e)(2)(B)(ii).

Because recklessly causing serious bodily injury to another does not qualify as a "violent felony" under either the "use of force" clause or the "otherwise" clause, Tennessee's aggravated-assault statute, § 39-13-102 (1991), is not categorically a "violent felony." *Cf. United States v. McFalls*, 592 F.3d 707, 716 (6th Cir. 2010) (concluding that a South Carolina statute is "not categorically a crime of violence" because it "applies not only to intentional conduct, but also to reckless conduct").

## 2. *Shepard* Documents Under the Modified-Categorical Approach

After determining that the statute does not categorically constitute a "violent felony," we "may consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction." *Gibbs*, 626 F.3d at 352. After reviewing the record, however, we conclude that the documents supporting McMurray's state conviction do not establish that McMurray necessarily pleaded guilty to a section of the aggravated-assault statute that constitutes a "violent felony."

In *Taylor*, when setting forth the categorical approach for evaluating whether a defendant's prior conviction qualifies as a predicate conviction for sentence enhancement, the Supreme Court also recognized that "[t]his categorical approach . . . may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [a qualifying crime]." 495 U.S. at 602. Therefore, the Court held that a prior conviction can constitute a predicate conviction if "the charging paper and jury instructions actually required the jury to find all the elements of [a qualifying crime] in order to convict the defendant." *Id.* In *Shepard*, the Court addressed the question of how to apply this modified-categorical approach when the defendant's prior conviction was the result of a guilty plea. In a pleaded case, the documents must demonstrate that "the plea . . . 'necessarily' rested on the fact identifying the [crime as a qualifying offense]." *Shepard*, 544 U.S. at 21 (quoting *Taylor*, 495 U.S. at 602). Thus we have held that "the question is whether the court documents establish that the defendant 'necessarily admitted' the

elements of a predicate offense through his plea." *United States v. Medina-Almaguer*, 559 F.3d 420, 423 (6th Cir. 2009) (quoting *Shepard*, 544 U.S. at 16).

We emphasize that our inquiry is limited to "facts [the] defendant 'necessarily admitted' in entering a guilty plea." *Id.* at 424. In other words, we may rely only on facts "inherent in the fact of a prior conviction or admitted by the defendant." *United States v. Alston*, 611 F.3d 219, 226 (4th Cir. 2010). When, as here, the statute of conviction is not categorically a "violent felony," we may examine whether the underlying documents establish that the defendant pleaded guilty to a narrowed charge that would qualify as a "violent felony." *See Shepard*, 544 U.S. at 25 (plurality) ("The state statute requires no finding of [a qualifying crime], and without a charging document that narrows the charge to the [qualifying] limits, the only certainty of a [qualifying] finding lies in jury instructions, or bench-trial findings and rulings, or (in a pleaded case) in the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea."); *United States v. Savage*, 542 F.3d 959, 966 (2d Cir. 2008) ("The *Shepard* Court identified two types of proof, relevant here, that might suffice to establish that a plea 'necessarily' rested on the elements of a predicate offense: (i) proof that the defendant admitted to predicate conduct when confirming the factual basis for a valid plea; (ii) proof that the charge was narrowed to include only predicate conduct." (quoting *Shepard*, 544 U.S. at 21–22)).

We conclude that the available documents do not demonstrate that McMurray pleaded guilty to a narrowed charge, or that McMurray admitted to facts that establish that he necessarily pleaded guilty to a section of Tennessee's aggravated-assault statute that constitutes a "violent felony." The record does not include the charging documents, and the documents provided—the plea petition, plea colloquy, and judgment—do not indicate expressly to which section of the aggravated-assault statute McMurray pleaded. In particular, during the plea colloquy, the parties and the trial judge referred to the charge as simply "aggravated assault." R.181-3 (Plea Colloquy at 1–2, 6–7). The trial judge asked McMurray, "Are you entering a best interest plea of guilty on that one charge of aggravated assault," to which McMurray responded, "Yes, sir." *Id.* at 7. The

government argues that the plea petition and judgment, which state that McMurray pleaded guilty to the category of aggravated assault that is a Class C felony, R. 181-1 (Plea Pet. at 1–2); R. 185-1 (Judgment), establish that he pleaded guilty to knowing or intentional aggravated assault. Under the current version of the Tennessee statute, this may be true. TENN. CODE ANN. § 39-13-102(e)(1) (2010) (providing that reckless aggravated assault, § 39-13-102(a)(2) (2010), is a Class D felony). McMurray, however, entered his plea and the state court entered judgment on April 29, 1993, R. 181-1 (Plea Pet. at 2); R. 185-1 (Judgment), and under Tennessee's aggravated-assault statute in effect at that time, all aggravated-assault convictions under § 39-13-102 were Class C felonies. TENN. CODE ANN. § 39-13-102(b) (1991) ("Aggravated assault is a Class C felony."). Therefore, the fact that McMurray pleaded guilty to a Class C felony does not establish whether he pleaded guilty to intentional, knowing, or reckless aggravated assault.

The government also asks us to consider the state's proffer of the factual basis for the plea during the plea colloquy to conclude that McMurray acted intentionally or knowingly when he committed the aggravated assault. *See* R.181-3 (Plea Colloquy at 5–6) (government's factual proffer). The plea colloquy is a document that we can consider under *Shepard*. 544 U.S. at 16 (stating that the district court "is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"). However, McMurray entered a best-interest plea under *North Carolina v. Alford*, 400 U.S. 25 (1970), which Tennessee allows when "a defendant . . . wishes to enter a plea but does not wish to acknowledge guilt." *Yant v. State*, No. M2007-01936-CCA-R3-PC, 2008 WL 5330459, at *7 (Tenn. Crim. App. Dec. 22, 2008) (unpublished decision) (citing *Alford*, 400 U.S. 25; *Hicks v. State*, 983 S.W.2d 240 (Tenn. Crim. App. 1998)).

We have not considered whether the prosecutor's proffer of the factual basis for a plea, when the defendant enters an *Alford*-type plea, "establish[es] that the defendant 'necessarily admitted' the elements of [a section of the statute that constitutes a "violent

felony"] through his plea." *Medina-Almaguer*, 559 F.3d at 423 (quoting *Shepard*, 544 U.S. at 16); *see United States v. Sawyers*, 223 F. App'x 475, 477 n.2 (6th Cir. 2007) (unpublished decision) (noting the issue but expressing no opinion because it was abandoned on appeal), *abrogated on other grounds by Begay*, 553 U.S. 137.  Applying *Shepard*, the Fourth Circuit has held that "the prosecutor's proffer of the factual basis for an *Alford* plea may not later be used by a sentencing court to identify the resulting conviction as an ACCA predicate." *Alston*, 611 F.3d at 227.  The District of Columbia Circuit and Second Circuit, in similar contexts, have concluded that the prosecutor's proffer of the factual basis underlying an *Alford*-type plea does not demonstrate that the defendant's plea necessarily rested on those facts if  the defendant has not assented to the prosecutor's factual proffer.  *United States v. Ventura*, 565 F.3d 870, 878–79 (D.C. Cir. 2009); *Savage*, 542 F.3d at 966–67.

We recently "declined to differentiate between an *Alford* plea and a straightforward guilty plea" when reviewing an immigration judge's ("IJ") decision that an alien had been convicted of "a particularly serious crime" under the Immigration and Nationality Act, § 241(b)(3)(B)(ii), 8 U.S.C. § 1231(b)(3)(B)(ii). *Ikharo v. Holder*, 614 F.3d 622, 633–34 (6th Cir. 2010).  The alien argued that "the IJ impermissibly relied on facts contained in the indictment and plea agreement as well as during the plea hearing." *Id.* at 633.  In rejecting the alien's argument, the *Ikharo* court relied on a Ninth Circuit case in which the court was analyzing whether a crime was a "crime of violence" under the Sentencing Guidelines and "held that the key question under the Guidelines was 'whether a defendant has a *conviction* for a crime of violence, not whether the defendant has admitted to being guilty of such a crime.'"  *Id.* (quoting *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1197 (9th Cir. 2006)).  The Ninth Circuit, however, has since held that the transcript of a plea hearing for a *West* plea—"the California equivalent of an *Alford* plea," *Doe v. Woodford*, 508 F.3d 563, 566 n.2 (9th Cir. 2007)—does not establish the factual predicate for a sentence enhancement unless the defendant admitted to the facts.  *United States v. Vidal*, 504 F.3d 1072, 1089 (9th Cir. 2007) (en banc) ("By entering a *West* plea a defendant does not admit the specific details about his conduct on the counts to which he pled guilty.  As a result, unless the record of the plea proceeding

reflects that the defendant admitted to facts, a *West* plea, without more, does not establish the requisite factual predicate to support a sentence enhancement." (alterations omitted) (citations omitted) (internal quotation marks omitted)).  Although we agree with *Ikharo* that an *Alford*-type plea does not undermine the fact of a defendant's prior conviction, we are persuaded by the reasoning of the Second, Fourth, Ninth, and District of Columbia Circuits that an *Alford*-type plea may impact our analysis of whether a defendant necessarily admitted the elements of a predicate offense through his plea.[10] We thus decline to extend *Ikharo* to the context of the ACCA.

Declining to consider the unadmitted factual basis proffered by the state to support an *Alford*-type plea to establish the nature of a prior conviction is, moreover, in line with other earlier decisions of this court interpreting *Shepard*.  We have noted that *Shepard* does not limit "the distinct, antecedent inquiry" of "establish[ing] the *fact* of the prior convictions and the resulting sentences imposed"; rather, *Shepard* limits what may be used "to establish the *nature* of the convictions or the specific offense conduct." *United States v. Jimenez*, 605 F.3d 415, 421 (6th Cir. 2010).  We have also declined to rely on a transcript from a preliminary examination to determine the nature of a prior conviction because the defendant "did not admit [to] that conduct during the examination."  *Medina-Almaguer*, 559 F.3d at 423.  We concluded that *Shepard* "requires a judicial record that identifies the facts a defendant 'necessarily admitted' in entering a guilty plea." *Id.* at 424.

Nor does the state trial court's finding of a factual basis for the charge establish that the defendant necessarily admitted the facts proffered by the prosecutor.  In a trial

---

[10]Although all of the categories of *Shepard* documents can be considered when evaluating an *Alford*-type guilty plea, not every available *Shepard* document that can be considered will "establish that the defendant 'necessarily admitted' the elements of a predicate offense through his plea." *Medina-Almaguer*, 559 F.3d at 423.  This is true in any case, not just those involving *Alford*-type pleas, as the particularities of the *Shepard* documents will be different in every case.  Where we differ from the dissent is in its belief that "an *Alford* admission" to, or "*Alford* acceptance" of, facts in the *Shepard* documents establishes that the defendant "necessarily" admitted those facts. Dissent at 28.  As explained below, a defendant who enters an *Alford*-type guilty plea has "necessarily" admitted to the elements of the charge but not the underlying factual basis.  Thus, by entering a best interest plea, McMurray pleaded guilty to the elements of aggravated assault but not the factual basis proffered by the prosecution.  The plea agreement, plea colloquy, or other *Shepard* documents may demonstrate that a defendant otherwise did admit to the factual basis underlying the plea, but the *Shepard* documents available in McMurray's case do not establish that he necessarily admitted the underlying facts during the plea process.

context, we must determine that the decisionmaker—jury or trial judge—was "actually required . . . to find all the elements of [a qualifying crime] in order to convict the defendant." *Taylor*, 495 U.S. at 602.  Thus we look to documents like charging papers, jury instructions, and a bench-trial's formal rulings of law and findings of fact.  *Id.*; *Shepard*, 544 U.S. at 20.  In contrast, in a pleaded case, the defendant—not the trial judge—is the relevant decisionmaker.  When pleading guilty, the defendant is waiving his right to trial and consenting to the imposition of punishment.  *Alford*, 400 U.S. at 37–38.  We must determine what the defendant was actually required to admit when pleading guilty; thus, we look to "a transcript of plea colloquy or . . . written plea agreement presented to the court, or . . . *a record of comparable findings of fact adopted by the defendant upon entering the plea*."  *Shepard*, 544 U.S. at 20 (emphasis added).  The state trial court was not required to determine the truth of the state's proffered facts relating how the crime was committed before accepting McMurray's best-interest plea of guilty.  The factual-basis requirement in Federal Rule of Criminal Procedure 11 and the equivalent state criminal-procedure rules, including Tennessee, is designed to help the trial judge evaluate the voluntariness of the defendant's plea.  *See McCarthy v. United States*, 394 U.S. 459, 465 (1969); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995); *Yant*, 2008 WL 5330459, at *8.  "Thus, although a court presented with an *Alford* plea must make a careful inquiry into the factual basis for the plea before accepting it, the distinguishing feature of an *Alford* plea is that the defendant does *not* confirm that factual basis."  *Alston*, 611 F.3d at 227 (alteration omitted) (citation omitted) (internal quotation marks omitted).  In other words, the defendant is not necessarily convicted of those facts.  *Shepard* similarly explained that the transcript of a jury trial or a police report may reveal facts underlying a defendant's conviction but they do not establish that the defendant was convicted of those facts.  544 U.S. at 22.  For a conviction resulting from an *Alford*-type guilty plea, the defendant has "necessarily" admitted to the elements of the charge but not necessarily the underlying factual basis.  *See Alston*, 611 F.3d at 226–27; *Savage*, 542 F.3d at 966–67; *Tunning*, 69 F.3d at 111 (stating that "a defendant who pleads guilty . . . admits to acts constituting the crime," whereas "a defendant who pleads guilty [under an *Alford*-type plea] either

1) affirmatively protests his innocence or 2) refuses to admit to acts constituting the crime").

It makes no difference that everyone understood McMurray's plea as relating to the facts alleged by the state at the plea hearing. *See Savage*, 542 F.3d at 967. The Court in *Shepard* rejected the argument that a defendant's plea necessarily rested on particular facts because those facts are the only ones in the record underlying the charges and the defendant never explicitly disputed them. *See Shepard*, 544 U.S. at 19, 21–22; *Medina-Almaguer*, 559 F.3d at 425 (stating, in explaining *Shepard*, that "[w]hat mattered was not how likely it was that Shepard had pleaded guilty to burglarizing buildings (or how unlikely it was that he had pleaded guilty to burglarizing 'ship[s], vessel[s] or vehicle[s]'), but whether the government could produce evidence showing that Shepard 'necessarily admitted' to breaking into buildings when he entered his pleas"). We must consider only the facts necessarily admitted by the defendant in pleading guilty even if we are forced "to feign agnosticism about clearly knowable facts." *Shepard*, 544 U.S. at 34–35 (O'Connor, J., dissenting). Moreover, permitting the district court to rely on the state's proffer of facts underlying the conviction, when the facts are not inherent in the crime of conviction or admitted to by the defendant, implicates the *Shepard* plurality's Sixth Amendment concerns. *Id.* at 24–26 (plurality); *Alston*, 611 F.3d at 225–26.

Finally, the fact that a plea is an *Alford*-type plea does not prevent the resulting conviction from ever serving as a predicate conviction for sentence enhancement. Convictions based on *Alford*-type pleas can be predicate convictions under the ACCA if the qualifying crime is inherent in the fact of the prior conviction—i.e., if the statute of conviction is categorically a "violent felony" or the *Shepard* documents demonstrate with certainty that the defendant pleaded guilty to a narrowed charge that would qualify as a "violent felony." *Cf. United States v. Vinton*, 631 F.3d 476, 487 (8th Cir. 2011) (concluding that a "precisely drawn charging document, which narrowed the charge to a crime that qualifies as" a "crime of violence" under § 4B1.2(a), "is one of the conclusive judicial records that can establish the basis for a defendant's conviction under

an overinclusive statute," even if the defendant enters an *Alford* plea (internal quotation marks omitted)).  Additionally, any facts reflected in the *Shepard* documents to which the defendant did admit in the course of his *Alford*-type plea can be considered.  *See, e.g.*, *United States v. Escalera*, 401 F. App'x 571, 573 (2d Cir. 2010) (unpublished decision) (affirming the district court's "determination that the offense fell within the narrowed federal definition of burglary" because the defendant, although entering an *Alford* plea, "'confirmed' the 'factual basis for the plea'" when he responded "yes" to the district court's question whether the factual allegations proffered by the prosecution were accurate (quoting *Shepard*, 544 U.S. at 26)); *United States v. Smith*, 390 F.3d 661, 666 (9th Cir. 2004) (relying on defense counsel's express admission at the plea hearing that the defendant entered a home to conclude that the defendant's conviction by nolo contendere plea encompassed the elements of generic burglary), *cert. denied*, 546 U.S. 905 (2005).  Nevertheless, the Court in *Shepard* contemplated that some convictions, as here, may not serve as predicate crimes for sentence enhancement because of "the happenstance of state court record-keeping practices and the vagaries of state prosecutors' charging practices."  544  U.S. at 22 (internal quotation marks omitted).

Accordingly, we conclude that the state's proffer of the factual basis for McMurray's best-interest plea does not demonstrate that McMurray's plea necessarily rested on facts identifying his aggravated-assault conviction as a "violent felony."  There is no indication in the plea transcript that McMurray admitted to the government's proffer of the facts supporting the charge when he entered a best-interest plea.  *See* R.181-3 (Plea Colloquy).  Nor do the documents demonstrate that he pleaded to a more narrowed charge than "aggravated assault."  Because the documents do not establish that McMurray necessarily pleaded guilty to a section of the Tennessee aggravated-assault statute qualifying as a "violent felony," McMurray's conviction does not qualify as a predicate conviction under the ACCA.

**III.  CONCLUSION**

For the reasons explained above, we conclude that the Tennessee aggravated-assault statute in effect at the time of McMurray's conviction is not categorically a "violent felony" and that we cannot determine from the available *Shepard* documents the nature of McMurray's conviction.  Accordingly, McMurray's 1993 aggravated-assault conviction does not qualify as a "violent felony" under the ACCA.  We **VACATE** the judgment of the district court and **REMAND** for resentencing consistent with this opinion.

———————

## DISSENT

———————

McKEAGUE, Circuit Judge, dissenting.  The majority plainly asserts that a conviction under Tennessee's aggravated assault statute is not a categorically violent felony.  However, because binding, and indeed recent, published authority from this Circuit has explicitly held otherwise, I must dissent.  I further note that *even if* the majority were free to correctly proceed to a modified-categorical analysis under *Shepard*, it fails to recognize that *all* of the sources approved by *Shepard* for consideration in a guilty plea case can be used in evaluation of an *Alford* plea to the same extent as a guilty plea..

## I.

First, the majority plainly ignores binding precedent from within our Circuit. *United States v. Matthews*, 278 F.3d 560, 563 (6th Cir. 2002)*, cert. denied*, 535 U.S. 1087 (2002), clearly held that aggravated assault in Tennessee constitutes a violent felony under the ACCA.  ("Reckless aggravated assault certainly 'presents' a serious risk of injury to its victim.").  The majority  here reasons, however, that this precedent is no longer valid in light of *Begay v. United States*, 553 U.S. 137 (2008).  Had *Matthews* been the last decision on the subject from this Circuit, the majority might have been correct to reconsider that precedent, because in some instances a published opinion is no longer binding when a subsequent "inconsistent decision of the United States Supreme Court . . . requires modification of the decision." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 654 (6th Cir. 1996) (internal citation omitted).

However, *Begay* did not directly overrule *Matthews*,[1] and since that time, this Court has again determined that Tennessee aggravated assault remains a categorically violent felony. *United States v. Benton*, 639 F.3d 723 (6th Cir. 2011), is a published decision from this Circuit. Decided after *Begay*, it explicitly states that "[t]he crime of aggravated assault [in Tennessee] . . . qualifies as a 'violent felony' for ACCA purposes." *Id.* at 730. The majority concludes that this statement was merely "dicta"—"not necessary to the outcome" of the case. Majority at 10. I respectfully disagree. *Benton*'s pronouncement that Tennessee aggravated assault is an aggravated felony was necessary to the Court's ultimate conclusion that solicitation "create[s] a heightened and serious potential risk of the occurrence of physical injury." *Benton,* 639 F.3d at 732. The Court did not have to engage in a separate inquiry as to whether the solicited conduct was serious enough to make the solicitation itself "present[] a serious potential risk of physical injury," precisely because it relied upon the conclusion that the underlying conduct itself would be a "violent felony." *Benton* determined that because solicitation requires intent that the underlying force or threat of force occur, "it also meets the criteria of 'violent and aggressive conduct.'" *Id.*

The majority's decision today *directly* conflicts with *Benton*. That is contrary to our most fundamental principle of *stare decisis*: "This court has long adhered to the 'venerable principle' that a prior published decision remains controlling unless overturned by an inconsistent decision of the United States Supreme Court or by this court itself sitting en banc." *Brown v. United States*, 462 F.3d 609, 620 (6th Cir. 2006) (Graham, J., dissenting) (citing *Schoenberger v. Russell*, 290 F.3d 831, 841 (6th Cir. 2002); *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996); 6 CIR. R. 206(c)

---

[1]In fact, the Supreme Court's recent opinion in *Sykes* makes it less clear whether *Begay* would require today's result at all. *Sykes* reiterated that the ACCA is intended to target crimes that "show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." *Sykes*, 131 S.Ct. at 2275 (quoting *Begay*, 553 U.S. at 146). *Sykes* stated that "[t]he phrase 'purposeful, violent, and aggressive' has no precise textual link to the residual clause"; that the "risk" assessment in the text of the ACCA is what generally "divide[s] crimes that qualify from those that do not"; and that such an assessment will sometimes render the "purposeful, violent, and aggressive inquiry" "redundant." *Id.* Ultimately, *Sykes* stated that "[a]s between the two inquiries, risk levels provide a categorical and manageable standard that suffices to resolve the case before us." *Id.* at 2275-76. It is unclear from the majority opinion in *Sykes* whether conduct must be "purposeful" under the residual clause in order to qualify as a "violent felony."

("Reported panel opinions are binding on subsequent panels. . . . Court en banc consideration is required to overrule a published opinion of the court."); *see also United States v. Hunt*, 278 F. App'x 491 (6th Cir. 2008) ("Unless and until overturned by the Sixth Circuit en banc or by the Supreme Court, [published decisions from this Circuit] are binding and must be followed."); *Solomon v. United States*, 467 F.3d 928, 935 n.1 (6th Cir. 2006) (Griffin, J., dissenting) ("[B]ecause [a prior case] has been followed in subsequent published decisions of our court [after intervening Supreme Court precedent] . . . I consider it precedentially binding until such time as it is overruled by the Supreme Court or by this court en banc.").

Put simply, we are "bound to follow [a Circuit precedent's] mandate unless and until a contrary rule is developed by this court en banc or by the Supreme Court." *United States v. Merkosky*, 135 F. App'x 828, 837 n.2 (6th Cir. 2005) (noting disagreement with binding precedent but acknowledging the duty to follow it nonetheless); *Schoenberger*, 290 F.3d at 842 (Moore, J., concurring) (acknowledging that questionable precedent controls, but stating that the Court may wish to reconsider it en banc). While *Benton* may very well be incorrect in light of *Begay* and *Leocal*—and I express no opinion on that possibility—it is the law of this Circuit. "[O]ne panel of this Court cannot overturn a decision of another panel; only the Court sitting en banc may do so." *Schoenberger*, 290 F.3d at 841 (Keith, J., concurring); *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009) (Gibbons, J., authoring) ("[W]e are without authority to overrule prior published decisions of our court absent an inconsistent decision of the Supreme Court or an en banc reversal."); *Bonner v. Perry*, 564 F.3d 424, 431 (6th Cir. 2009) (Moore, J., authoring) ("Bonner argues that *Collard* should be overruled. However, Bonner does not cite any intervening Supreme Court decision that would allow us to reconsider the issue, nor are we sitting en banc. Therefore, we do not have the power . . .").

I also note that "when a later decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case." *Darrah v. City*

*of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001).    Unless and until *Benton* is overruled—by the whole Court and not just two members of it—it remains controlling.

## II.

Moreover, *even if* the majority were free to proceed to a modified-categorical analysis, its analysis does not comport with *Shepard*.  I agree with the majority that, in this particular case, an application of the modified-categorical approach would fail to establish that McMurray "necessarily" pleaded guilty to a violent felony; however, I disagree with the majority's analysis of the issue.  The majority agrees that the statute itself or a narrowed indictment can be considered in evaluating an *Alford* plea.  It further purports to agree that the other *Shepard* documents—plea agreements, plea colloquies, and factual bases at the plea hearing—can be considered, but then creates an important limitation: these can only be relied upon, the majority concludes, if the defendant *actually admits guilt* to the facts constituting a violent felony.  I would instead hold that all of the categories of documents approved by *Shepard* for evaluating guilty pleas can be relied upon—*to the same extent*—when the defendant instead enters an *Alford* plea.

It is clearly established that several types of documents can demonstrate that an underlying guilty-plea conviction is a violent felony: "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" *United States v. Wells*, 473 F.3d 640, 647 (6th Cir. 2007) (quoting *Shepard,* 544 U.S. at 16).  The majority recognizes that an *Alford* conviction *does* serve as a predicate offense when the conviction was categorically a violent felony, and when the charging document narrows the charge to either a factual basis or statutory section that is a violent felony.  Majority at 19; *see also, e.g., United States v. Savage*, 542 F.3d 959, 964 (2nd Cir. 2008); *United States v. Cruz-Serrano*, 135 F. App'x 26, at *1 (9th Cir. 2005) (citing *United States v. Smith*, 390 F.3d 661, 665 (9th Cir. 2004) (holding that in a modified categorical analysis, "the fact that Cruz-Serrano entered a nolo contendere plea is of no consequence in assessing whether the conviction may be counted as a predicate offense"); *United States v. Ortkiese,* 208 F. App'x 436 (6th Cir. 2006) (holding that a nolo contendere plea did

not preclude the sentencing court from relying on the charging document to establish the conviction was a "violent felony"); *Vinton*, 631 F.3d at 487 (concluding that a "precisely drawn charging document, which narrowed the charge to a crime that qualified as" a "crime of violence" can establish predicate offense when *Alford* plea entered); *United States v. Mackins*, 218 F.3d 263, 268 (3d Cir. 2000).

Unfortunately, the majority then departs from *Shepard*'s list of approved documents. It recognizes that *Shepard* approved reliance upon plea agreements, plea colloquies, and factual bases at the plea colloquy, but then immediately states that it is "persuaded" by other circuit decisions that have refused to allow the proffer of the factual basis for an *Alford* plea to be used to identify the resulting conviction as an ACCA predicate. Majority at 16. This is, however, contrary to this Court's holding in *Ikharo v. Holder*, 614 F.3d 622 (6th Cir. 2010).

*Ikharo* involved a review of an immigration judge's decision that an alien had been convicted of "a particularly serious crime." The defendant argued that the court could not rely on a particular underlying conviction because it was entered pursuant to an *Alford* plea. However, this Court reiterated that "[a]n *Alford*-type guilty plea is a guilty plea *in all material respects*," and held that it is permissible to rely upon "facts contained in the indictment and plea agreement as well as during the plea hearing." *Id.* at 633 (emphasis added). The majority states that it "decline[s] to extend" *Ikharo*, majority at 16, but no extension is needed. *Ikharo* rejected the argument that facts in the indictment, plea agreement, and plea hearing could not be considered due to an *Alford* plea—the issue is not whether *Ikharo* should be extended, but simply that it should be *followed*.

The majority states that by entering a best interest plea, McMurray pleaded guilty to the elements of aggravated assault but not the factual basis proffered by the prosecution. Majority at 16 n.10. This is inaccurate. First, a defendant pleading guilty could attempt the same argument—that he simply admitted guilt to the elements of the crime, but not to the additional facts contained in the plea agreement, discussed in the plea colloquy, or accepted as the factual basis for the convictioSn. But *Shepard*

demonstrates that such an argument fails: an individual pleading guilty to an offense pleads guilty to—and can be held responsible for—the elements in the statutory offense *and* facts in these additional documents when they necessarily demonstrate the violent nature of the act.   The same is true for an *Alford* plea.  Second, a defendant entering an *Alford* plea does not *admit* guilt at all—to the facts *or* the elements of the offense—but he can likewise be held responsible for both.[2]

I believe that all of the sources approved by *Shepard* for consideration in a guilty plea case can be used *in the same manner* in evaluation of an *Alford* plea, in appropriate circumstances.  *Shepard* held that such documents enable a court to make the necessary determinations, and thus this information "would do in any sort of case." *Shepard*, 544 U.S. at 20-21.  The difference between a plea of guilty and an *Alford* plea is of "no constitutional significance." *Alford*, 400 U.S. at 37.  We are bound by this Court's determination that a "plea of nolo contendere 'has a similar legal effect as pleading guilty.'" *United States v. Arnold*, 58 F.3d 1117, 1124 n.5 (6th Cir. 1995) (citing BLACK'S LAW DICTIONARY 1049 (6th ed. 1990)).  An *Alford* plea to a categorically violent felony supports ACCA enhancement in exactly the same way that a guilty plea would do so; there is no principled reason to say that the same is not true for analysis of the facts in the underlying *Shepard* documents.[3]

Because the ACCA "refers to predicate offenses in terms not of prior conduct but of prior 'convictions' and the 'element[s]' of crimes," *Shepard*, 544 U.S. at 19, we must

---

[2]Additionally, the majority's concession regarding plea colloquies and factual bases is quite illusory; very few defendants—if any—will bother entering an *Alford* plea only to then actually admit guilt to the facts.  Analyzing an identical plea colloquy differently depending on whether the plea is a guilty or *Alford* one violates clearly established precedent.  *See Alford*, 400 U.S. at 37 (noting the difference between the two is of "no constitutional significance.").

[3]Indeed, the majority's distinction, in practical terms, will mean that ACCA enhancement in *Alford* cases will now turn on the happen-stance choice of words used by the judge and defendant in the plea colloquy or provision of factual basis.  If the judge asks the defendant, "The government alleges that you brandished a firearm and waived it at police officers.  Do you admit to this factual basis?," an answer of "Yes" will support ACCA enhancement under the majority's analysis.  But if the judge—in the same case—instead says, "The government alleges that you brandished a firearm and waived it at police officers.  Do you acknowledge this factual basis?," it cannot be used.  This is a nonsensical distinction, especially since the second question can still support ACCA enhancement in a guilty plea case.  *See Shepard*, 544 U.S. at 25 (determining that "the defendant's own admissions *or accepted findings of fact*" provide the type of certainty sufficient for ACCA enhancement).

"analyz[e] whether [a defendant] ha[s] been *convicted* of a particularly serious crime, not whether he ha[s] admitted his guilt." *Ikharo*, 614 F.3d at 633-34 (6th Cir. 2010) (emphasis in original). Therefore, the documents explicitly approved by *Shepard* are equally appropriate to consider in an *Alford*-plea setting—this includes the same analysis of not only the statutory definition and charging document (as the majority acknowledges), but also the same analysis of the "statement of factual basis for the charge . . . shown by a transcript of plea colloquy or by written plea agreement presented to the court," or by a "record of comparable findings of fact adopted by the defendant upon entering the plea." *Shepard*, 544 U.S. at 20. This result is supported by ample case law from multiple circuits. *See Savage*, 542 F.3d at 964; *Cruz-Serrano,* 135 F. App'x 26, at *1 (9th Cir. 2005) (citing *United States v. Smith*, 390 F.3d 661, 665 (9th Cir. 2004) (holding that in a modified categorical analysis, "the fact that Cruz-Serrano entered a nolo contendere plea is of no consequence in assessing whether the conviction may be counted as a predicate offense); *Mackins*, 218 F.3d at 268 ("[W]e conclude that an *Alford* plea is, without doubt, an adjudication of guilt and is no different than any other guilty plea for purposes of § 4A1.1 [of the Guidelines]."); *United States v. Salean*, 583 F.3d 1059, 1061 n.3 (8th Cir. 2009); *United States v. Delgado-Lucio*, No. 05-2201, 2006 WL 1644721, at *3 (10th Cir. June 15, 2006) ("[A]n *Alford* plea is a guilty plea and properly considered as a prior criminal conviction for purposes of the Sentencing Guidelines."); *Abimbola v. Ashcroft*, 378 F.3d 173, 181 (2d Cir. 2004) (noting that "an *Alford* plea *is* a guilty plea," and that the relevant question is whether there was a conviction, "as opposed to an admission of guilt") (emphasis in original); *see Ikharo*, 614 F.3d at 633-34 (using *Alford* plea as predicate offense in the immigration context); *see also United States v. Wesley*, 895 F.2d 1415 (6th Cir. 1990) (holding that *Alford* plea was sufficient for finding of "crime of violence," despite defendant's explicit denials of the "violent" conduct at sentencing).

In this particular case, a modified-categorical analysis would reveal that the state has failed to establish that McMurray "necessarily" pleaded guilty to a violent felony—but that is because *none* of the *Shepard*-approved circumstances are present in this case. The indictment is not contained in the record. The plea agreement does not

contain facts demonstrating a violent felony. And while a factual basis was read at the plea colloquy, the sentencing judge never asked the defendant to confirm or accept—by *Alford* plea or otherwise—that factual basis. The court merely had the factual basis read, and then later asked, "Are you entering a best interest plea of guilty on that one charge of aggravated assault?" to which McMurray replied "Yes, sir." Therefore, the state failed to establish that McMurray "necessarily" pleaded guilty to a violent felony—but that is not the required result in every similar case.

Instead, an *Alford* guilty plea *can* serve as a predicate offense where: (1) the statutory definition demonstrates that the conviction is categorically a violent felony; (2) the charging document narrows the charge to either a factual basis or statutory section that is a violent felony; (3) the plea agreement contains facts demonstrating the violent felony; (4) the plea colloquy reveals an *Alford* admission to facts constituting a violent felony; or (5) the sentencing court requires the defendant to confirm—through an *Alford* acceptance— a factual basis constituting a violent felony. The majority fails to recognize the latter three in this list, instead adding a requirement that the facts be explicitly admitted.

There are consequences to second-guessing the Supreme Court's determination that these documents should be considered: any defendant pleading to a crime that is not categorically a violent felony can avoid ACCA enhancement if the indictment does not narrow the offense, simply by entering an *Alford* plea—even if the plea agreement states predicate conduct, or the defendant himself acknowledges to the court that the factual basis presented by the state would demonstrate predicate conduct at trial.

Because an *Alford* plea and a guilty plea are legally the same, requiring *Alford* assent to requisite facts—either in writing in the plea agreement, or by verbal acknowledgment at a hearing—means that the conviction "necessarily" involved predicate conduct to the same extent as it would in a guilty plea case. *Shepard*, 544 U.S. at 25 (holding that "written plea agreement[s]," "accepted" findings of fact, or statements "confirming the factual basis for a valid plea" will suffice). The Ninth Circuit case cited by the majority, *United States v. Vidal*, 504 F.3d 1072 (9th Cir. 2007), agrees

with this conclusion.  It states that all five categories of documents can be considered, *see id.* at 1086.  It further explains that a *West* plea agreement *can* provide a basis for determining the qualifying nature of the underlying conviction, *see id.* at 1089, but that in that particular case, no qualifying facts were contained in the "facts" section of the agreement.  *Id.*  *Vidal* indicates that if the court possessed a "memorialization of the terms of the plea bargain," that document could have been considered in determining whether the conviction was for generic theft.  *Id.*  That decision also states that where a defendant admits in a plea colloquy—in the context of a *nolo contendere* plea—to entering a dwelling, the offense constitutes generic burglary.  *Id.*  (citing *United States v. Smith*, 390 F.3d 661, 666 (9th Cir. 2004)).  Similarly, *Smith* held that in a *nolo contendere* case, "the district court may rely on the undisputed factual basis as stated at the plea hearing to support the ACCA enhancement."  *Smith*, 390 F.3d at 665-66; *see id.* ("The legal effect of [a *nolo contendere*] plea . . . shall be the same as that of a plea of guilty for all purposes.") (citing Cal. Penal Code § 1016).

The Second Circuit has also explicitly agreed with this approach.  In *United States v. Palmer*, 68 F.3d 52 (2nd Cir. 1995), the defendant had entered a *nolo contendere* plea in his underlying conviction, and the information document in the case did not specify qualifying conduct.  However, at the plea colloquy, the court "inquired whether Palmer had 'heard the [foregoing] facts that were read by the prosecutor' and agreed that he was entering his plea of nolo contendere thereto, and Palmer answered affirmatively." *Id.* at 54.  The court held that where a defendant enters a *nolo contendere* plea, but the "plea proceeding includes a lucid description of the conduct for which [the defendant] was convicted," and the defendant's "on-the-record-agreement to the description of his conduct proffered by the prosecuting attorney," it results in "the functional equivalent of a plea agreement with respect to that conduct," and sentence enhancement based on that conviction was appropriate.  *Id.* at 59.

I would join these circuits in holding that *Shepard* meant what it said: all of these documents should be equally relied upon "in any sort of case." *Shepard*, 544 U.S. at 20-21.

**III.**

Because *Matthews* and *Benton* are binding and controlling, I am bound to object to the majority's contrary holding that McMurray's aggravated assault conviction is not categorically a violent felony.  I also would hold that if a modified-categorical analysis is reached, a defendant's *Alford* plea does not prohibit a court from looking to the statutory definition, charging document, plea agreement, plea colloquy, or factual findings in determining whether a crime qualifies as a "violent felony" under the ACCA. Therefore, I dissent.